## NATIONAL BINDING MACH. CO. v. JAMES D. McLAURIN CO.

(Circuit Court, S. D. New York. March 2, 1911.)

1. PATENTS (§ 235*)—INFRINGEMENT—DEFENSES.

Infringement is not avoided by the fact that defendants' machine does not work as perfectly as complainants', provided it is intended to work in the same way.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 371; Dec. Dig. § 235.*]

2. PATENTS (§ 328*)—INFRINGEMENT—BINDING MACHINE.

The Piper patent, No. 700,816, for a device for supporting and delivering paper for wrapping or binding purposes, claims 2 and 5 construed, and *held* infringed.

In Equity. Suit by the National Binding Machine Company against the James D. McLaurin Company. Decree for complainant.

This is the usual suit in equity for the infringement of patent No. 700,816, which is a device for supporting and delivering paper for wrapping and binding purposes. The device consists of a holder for a roll of gummed paper

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tape, in combination with a roller for moistening the paper and a knife for cutting it off after it has been pulled out to any desired length. The combination is completed by a mechanism for removing the paper from the top of the roller so that it will not stick to it. As specified in the patent, this is accomplished by having the paper before it reaches the roller pass over a swinging guide which holds the free end away from the roller. When the free end is pulled, it comes in contact with the roller, because the swinging guide is depressed, but, after the paper is cut, the guide is so weighted that it again carries the free end of the paper away from the roller.

The defendant's device consists of a horizontal roller for a roll of gummed paper. Close to the periphery of the holder is an upright post, and a short distance from this post and in substantially radial line with it are twin posts. Continuing on the same radius is the base of an upright sponge holder which keeps moist by capillary attraction. Still further on the radius is a serrated edge which acts as a knife blade. The operation of the defendant's machine is as follows: The gummed tape is passed below the peripheral post between the twin posts and over the face of the sponge. As it is pulled across the face, it becomes wet, and then is torn off upon the serrated edge. The sponge case is so placed that its face is substantially parallel to the radius already mentioned. Its base, however, is upon that radius, and, as its height is about three-quarters of an inch, the plane of the moistening surface is that distance above the radius mentioned. Consequently, as the tape is drawn between the twin posts, it makes an angle with the radius in question dependent upon the distance between the twin posts and the nearer side of the sponge-box. This angle is the same as the angle made by the tape with the face of the sponge, which is, as has been said, parallel with the radius. As the tape is drawn over the face of the sponge, it must be bent at the edge of the face through this angle, and, when the end is cut off, the paper tends to re-establish itself in a straight line, the tendency resulting from the natural energy of the paper, and therefore varying with its stiffness. The greater the angle between the face of the sponge and the tape, the greater the force with which the paper tends to leave the face of the sponge. In much the greater number of cases the tape does not leave the edge of the sponge nearer the twin posts, but rests lightly in contact with it either across the whole face of the tape or if the tape curls longitudinally then at the two points where either edge touches the edge of the sponge. This contact takes place almost universally and in all instances in which the experiment has been made by the court. The testimony, however, is to the effect that in a certain number of cases the tape rests clear of the edge of the sponge.

In the commercial form of the complainant's machine, the tape likewise always touches the wet roller. After it has been torn off at the serrated edge which replaces the knife of the patent disclosure, a spring bale draws the tape back from the roller preventing any sticking between the two, but, the tape curling longitudinally, its edges actually touch the roller lightly in all cases: the stiffness of the paper not being sufficient to counteract the force of gravity.

The two claims in issue are as follows:

"(2) The combination of a holder for a mass of paper, a device for moistening the surface of the paper, and a device which automatically moves the paper away from the moistening device, arranged between the paper holder and the moistening device, substantially as set forth."

"(5) The combination of a support for a roll of paper, a roller for moistening the surface of the paper, a knife for severing the paper adjacent to the said roller, and means for moving the free end of the paper which is adjacent to the surface of the moistening roller away therefrom, substantially as set forth."

Frederick L. Emery, for complainant.
T. Hart Anderson, for defendant.

HAND, District Judge (after stating the facts as above). The defendant does not assert that these claims are invalid, but does insist

that under their natural meaning and the prior art they must be limited so as not to cover the defendant's machine. There can be no question that the serrated edge is a mechanical equivalent for the knife, and that the sponge is an equivalent for the roller; nor is there any substantial difference in the fact that the complainant's machine is vertical and the defendant's horizontal. The real issue is upon the following words in claim 2:

"A device which automatically moves the paper away from the moistening device arranged between the paper holder and the moistening device."

And in claim 5:

"Means for moving the free end of the paper which is adjacent to the surface of the moistening roller."

Before taking up the literal meaning of these claims, it will be best to consider their interpretation from the file wrapper and the prior art. The original of both claims was as follows:

"A guide for holding the paper out of contact with the roller when the paper is not being used."

Against this was cited Hobbs No. 542,384, whereupon the present claims were substituted in substantially their present form and were at once passed without objection. Claim 2 is differentiated from Hobbs, in the first place, because it was automatic, and, in the second place because it was between the paper holder and the moistening device, neither of which was the case in Hobbs. Claim 5 is differentiated because the free end of the paper was not adjacent to the moistening roll in Hobbs. It is true that the defendant says that the frame containing the paste bath in Hobbs might be lowered so as to approach the knife, but the purpose of the machine was to keep a considerable length of paper between the paste bath and the knife, since it was only upon that paper that the paste would be tempered which was the main purpose of the machine. That purpose would be defeated if the knife was closely approximated to the paste bath, so that the free end of the paper could be said to be adjacent to the moving device.

The reference and changes consequent thereon in no sense limit the character of the device itself. The defendant insists that the means indicated must be themselves moving, but this is obviously not so, because the means in Hobbs were moving, and, if that had been the purpose of the citation, it was not answered by the change of the claims. The file wrapper therefore contains nothing of interest.

Next as to the prior art as a basis for construing the claims. In it there is nothing of consequence except Bruen, No. 305,892, and Hobbs already cited. Bruen, with slight modifications, would unquestionably have been a good anticipation of the defendant's machine. Had the roller in that case been raised, a serrated edge been added, a continuous gummed strip been used, and the machine placed horizontally, it would certainly have been the equivalent of the defendant's; but these changes were by no means obvious. It is true that the slot in Bruen through the natural energy of the paper would tend to lift the free end of the tape from the roller G, and it might have been enough to overcome both the adhesion of the gum to the roller and the force

of gravity. Certainly, if it had been placed horizontally, it would have done as well as the defendant's machine as originally patented. If the differentiation between the patent in suit and Bruen rested only in the moving means, the defendant would not infringe, but there is a wider differentiation between Bruen and the patent in suit than this, for Bruen was designed for a very different kind of use. It is true that it was used to moisten package fasteners, but the fasteners were to be torn off at the perforations, and must necessarily therefore be of predetermined length. They were not intended to be moistened, before they were detached, for the roller was not adapted to moisten them by a straight draft over the roller tank; so that the problem did not arise of detaching the free end from the roller. Apparently each piece was to be wetted after it was torn off, like a postage stamp. Were this not so, practical difficulties would have arisen in operating the machine. Had the piece been pressed down at the far end of the roller tank, thus serving as a knife edge, it would have stuck there. If the exact line of perforation did not touch the edge, the paper would not have torn correctly. If the machine was not horizontal, it is doubtful whether the paper would have freed itself from the roller. All these things show that the patent in suit shows a quite new idea; that is, the idea of a continuous roll of paper to be wet by the draft upon it and cut in various lengths. The fact that this idea has been the basis for a new method of making up parcels and so of a new industry is answer enough to the claim that it was obvious. A mechanical equivalent must be the same thing used for the same purpose, and in Bruen the same thing was not used for the same purpose as in the defendant's. I do not think, therefore, that Bruen should limit the claims, because the patent in suit would still be a valid patent, even if the disclosures had actually shown the same removing means as Bruen.

The question remains whether the defendant's machine removes the tape from the sponge at all within the meaning of the claims, and in deciding that question the action of the patent in suit itself may fairly be considered. The purposes of moving the tape from the roller are three: First, page 1, lines 62, 63, 64, to "prevent the strip from becoming wet and weakened so that it will readily break"; and second, page 2, lines 5, 6, 7, 8, so that the "danger that the paper shall stick to this part of the apparatus while the parts are at rest is reduced to a minimum"; third, page 2, lines 25-29, "so that the free end of the paper is directly over the moistening roller in position to be pressed against the moistening roller by hand, should such end of the paper be found to be dry." All these purposes are secured, provided that the tape be detached from the surface of the moistener, even though it rest lightly against the moistener, and, as I have said, in the complainant's device it does rest against the moistener, but not so as to become wet or to stick. The defendant's device secures all those three purposes. The first it secures because the contact between the tape and the edge of the sponge is too light to moisten the tape; the second because the paper's native resiliency removes it from the face of the sponge in a majority of instances; the third be-

cause the angle through which the free end of the paper moves brings it more nearly over the face of the sponge. I know that the diagrams of the patent in suit show the tape to be quite disconnected from the roller, and that the patent itself speaks of the strip as remaining out of contact with the roller (page 1, line 60; page 2, line 22), but I believe that the relevant contact is that which insures the operation of the machine, and that both the complainant's commercial machine and the defendant's machine accomplish.

It is true that in a large number of instances the tape in the defendant's machine actually sticks to the face of the sponge. To that extent the machine does not operate with certainty. However, the removal of the tape depends altogether upon the angle at which it crosses the edge of the space of the sponge face. If the twin posts are moved nearer the sponge, the angle between the tape and the face of the sponge approaches 90 degrees, and, with a slight change in position, the tape will not stick to the face of the sponge at all. This can be easily tested by holding a lead pencil firmly upon the radius line at a point between the twin posts and the sponge. The question is one of degree, therefore, and in the actual machine in evidence the twin posts are so placed as not to insure detaching the tape from the sponge.

[1] However, it is no defense to infringement that the defendant's machine does not work as perfectly as the complainant's, provided that it is intended to work in the same way. Cimiotti Unhairing Co. v. Bowsky (C. C.) 95 Fed. 474; Hubbard v. King Ax Co. (C. C.) 89 Fed. 713; Robinson v. Sutter (C. C.) 8 Fed. 828. The machine does detach the paper in a majority of instances for all effective purposes, and it does so because it contains means for doing so, which the horizontal position of the roll permit to be generally operative. It is not necessary to determine whether the original patent of the defendant would infringe or not. I can see no purpose in the peripheral pin, except that, by making the angle smaller through which the paper is bent at the twin posts, it relieves the pressure of the tape against the edge of the sponge, a pressure caused by the reaction of the paper to a straight line, and so dependent upon the size of the angle through which it has been bent.

[2] The only remaining question is the purely verbal one as to whether the defendant's machine has means for moving the paper when the paper in fact moves itself. I think the distinction is entirely scholastic. The fact is that in the defendant's machine, owing to the bending of the paper during draft, a certain static energy is stored up which effects the removal of the paper after it has been released. It seems to me that the means by which that energy is stored in the paper are means for moving the paper as much as though the energy was stored up in a spring bale, or in a guide working by gravity. The court is not concerned with the scholastic metaphysics as to which of the necessary factors to produce the result is its causa causans.

Let the usual interlocutory decree pass, with costs.