SYRACUSE CHILLED PLOW CO. v. LEROY PLOW CO.

(District Court, W. D. New York. February 18, 1916.)

No. 128B.

1. PATENTS ⟨⟩328—VALIDITY AND INFRINGEMENT—SULKY PLOW.
    The Wiard patent, No. 865,141, for a sulky plow, construed, and *held* infringed.

2. PATENTS ⟨⟩226—INFRINGEMENT.
    Infringement is not avoided because the infringing construction is not adapted to attain all the benefits of the patented device.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 357; Dec. Dig. ⟨⟩226.]

In Equity. Suit by the Syracuse Chilled Plow Company against the Leroy Plow Company. On final hearing. Decree for complainant.

Parsons & Bodell, of Syracuse, N. Y. (Karl E. Wilhelm, of Buffalo, N. Y., and Arthur E. Parsons, of Syracuse, N. Y., of counsel), for plaintiff.

Church & Rich, of Rochester, N. Y. (Frederick F. Church, of Rochester, N. Y., of counsel), for defendant.

HAZEL, District Judge. The bill charges infringement of patent No. 865,141, granted to H. Wiard September 3, 1907, relating to reversible sulky plows. The object of the inventor was to furnish means for connecting the plow beams at their front ends to a substantially level hitch bar or draft member, as the specification has it, to increase the efficiency of the plow. The separate elements of the combination were old. The validity of the patent is not disputed. It is, however, urged that the claims in issue are limited to a sulky plow in which the ends of the beams are held in a horizontal plane under all circumstances, and that, as defendant does not so hold them, infringement was not proven.

[1] It is shown that prior to the improvement in question the complainant company manufactured and sold sulky plows in accordance with the description contained in patent No. 372,884, a prior expired patent granted to Wiard & Bullock and owned by complainant, which

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

were identical with the one described in the patent in suit, save that the earlier plow used a shifting hitch and bar in front of the beams, with loose links between the clevis and the eye in the hitch bar; the idea at that time being that the plow would work better with a loose or flexible shifting hitch; but this proved erroneous, and, though such arrangement was used for many years, it was never satisfactory, as it failed to shift readily, or to stay shifted when the horses were drawing back the plow to turn for beginning another furrow. It was often necessary to loosen the shifting clevis from the pull of the team, which had a tightening tendency, rendering it difficult for the plowman to move it downward from the rod or bar. Various changes were made at different times to remedy such defects or inefficiencies, but without avail, until the disclosures by the patentee herein.

The shift bar of the patent in suit is made straight throughout its length from one front beam to another, and horizontal movable members having eyes connecting the hitch bar are provided to support it coaxially at the end. This arrangement enables holding it substantially rigid and approximately horizontal when the other mechanism tends to move it, and prevents it from holding to the bar when the front ends of the plow beam are either lifted from the ground or lowered for plowing. The specification says:

"When a plow is in its operative or depressed position, the front end of the beam carrying such plow is in advance of the corresponding end of the other beam, and since each member 6 holds one end of the bar 17 from substantial vertical movement relatively to the end of the plow beam comprising member, said bar 17 is held by the members 6 in a substantially horizontal position and inclines rearwardly from the front end of the beam carrying the plow in use. Consequently the draft member 20, under the strain transmitted thereby to the plow, moves automatically lengthwise of the bar 17 to the desired position in advance of the beam from which the bar 17 inclines rearwardly. This invention, although simple in construction, greatly reduces the necessity of attention to the draft connections, and enhances the utility and efficiency of the plow."

The claims in controversy are the first, second, fourth, fifth, seventh, and eighth. They differ from the prior Wiard & Bullock patent, in that the forward ends of the beams therein described are held at substantially the same level, and that the hitch bar is held from vertical movement relative to its beam end and to the hitch and eyes carrying it.

Defendant's contention that the claims are limited to a maintenance of the beams in the same horizontal plane is not substantiated. The patentee was the first to arrange a shift bar in a substantially horizontal position between the plow beams to overcome the difficulties in plowing, and accordingly a plow substantially embodying the improvement and achieving the identical beneficial result comes I think within the scope of the claims in suit. Therefore any slight differences between the position of the shift bars of complainant's and defendant's plows are not of material importance and do not avoid infringement. It is clear enough that there are advantages in holding the hitch bar of complainant's structure approximately horizontal. As defendant's structure has the detailed arrangement of eyes at the ends of the beams, together with a straight bar to hold the ends of the beams coaxially to

prevent a substantial upward or downward movement in relation to the main part of the beam, it achieves substantially the same result as the complainant's. In the former there are the same raising and lowering mechanisms as in the latter, except that the stop device for limiting the upward movement of the beam at a point rearward of the front end is somewhat different; but such difference is immaterial, as the combination of elements in both structures is substantially the same, and in each the front ends of the beams occupy a substantially horizontal plane. Although there are adjustments in defendant's plow which function to hold the end of the hitch bar of the idle plow slightly higher than that of the working plow, I nevertheless believe that the position of the bar is nearly or approximately horizontal and within the intendment of the claims in suit.

[2] It was contended by defendant that in the operation of complainant's plow the sliding clevis shifted whenever the lever was rotated to drop one of the plows, and that therefore the mode of operation was different from defendant's; but I think the evidence fairly shows the contrary. There was testimony regarding the height of the pole in defendant's plow, which it was urged determined the plane of the forward ends of the beams under working conditions; but, as the pole is in my estimation substantially level in both plows when in use, such testimony can have no persuasive bearing to negative the asserted infringement. Of course the pole may be raised or improperly adjusted to make it impossible to use the shifting hitch with advantage; but in such case it is evident that the user of the plow would not obtain the beneficial results of the patent in suit. It makes no difference that defendant does not adapt its construction to attain all the benefits of the patent in suit. It has all the means to attain the result, and presumably it was its intention to operate the plow in the same way as complainant's operated. Cimiotti Unhairing Co. v. Bowsky (C. C.) 95 Fed. 474; Hubbard v. King Ax Co. (C. C.) 89 Fed. 713; National Binding Mach. Co. v. James D. McLaurin Co. (C. C.) 186 Fed. 996. Other points to negative infringement were argued, but they are unsubstantiated.

My conclusion is that the patent in suit was for a patentable improvement over the prior Wiard & Bullock patent, and though the claims are of narrow scope, and restricted to (1) means for maintaining the shift bar substantially or approximately horizontal, and (2) means at the end of the bar for raising and lowering the plows without causing a binding of the shift bar, I am of opinion that the defendant's plow, though not employing the identical means, employed equivalent means operating upon the same principle and achieving the same result and advantages.

Accordingly, a decree, with costs, may be entered in favor of complainant, holding the claims valid and infringed.