NATIONAL BINDING MACH. CO. v. EISLER et al.    SAME v. W. J. ANDERSON & CO.    SAME v. RELIABLE GUMMED TAPE CO.

(District Court, S. D. New York.    April 3, 1912.)

Nos. 8–4, 8–3, and 8–5.

PATENTS (§ 328\*)—VALIDITY AND INFRINGEMENT—BINDING MACHINE.

The Piper patent, No. 700,816, for a device for supporting and delivering paper for wrapping or binding purposes, was not anticipated, and discloses patentable invention. Claims 2 and 5 construed, and *held* infringed.

In Equity. Suits by the National Binding Machine Company against Anthony Eisler, William M. Lambert, and Junius Nagel, comprising the firm of Anthony Eisler & Co., against W. J. Anderson & Co., and against the Reliable Gummed Tape Company. On final hearing. Decrees for complainant.

Actions on patent of Robert H. Piper, No. 700.816, being the same patent involved in National Binding Machine Co. v. McLaurin Co. (C. C.) 186 Fed. 992.

Mr. Emery and Mr. Varney, for complainant.
Mr. Redding and Mr. Austin, for defendants.

HOUGH, District Judge. No exposition of the operation of complainant's machine or of the relation between the patent claims and the machine itself is necessary. That has been given recently and with sufficient fullness by Hand, J., in the McLaurin Case, supra Instead of testing the stability of that decision by an appeal, the present action has been brought on with the evidence on both sides very considerably amplified.

The position of the defendants on these records is best shown by a remark of their expert (Prof. Main), who was asked whether he had read Judge Hand's opinion in the McLaurin Case, and replied:

"I have read that opinion, and cannot but feel that if the present defendants' machines had been involved, and still more if the prior art and prior usages had been presented to his honor as they have been testified to in this case by such practical men as Bruen, Anderson, and others, the opinion of the court would have been quite different."

Differences of opinion are inevitable. Such differences in different courts have tried and long will try public patience; but expressed differences of opinion in the same court resulting in different decisions in similar cases are intolerable. This court (by Hand, J.) has spoken on this patent, and what was said has been commented on by Ward, J. Without expressing any personal views of my own, I hold (1) with Hand, J., as to the construction of the patent itself, and particularly (this being in my judgment the vital part of his opinion) that by the bending of the paper during draft a certain static energy is stored up which effects the removal of the paper after it has been released; also, that the means by which that energy is stored in the paper are means for moving the paper as much as though the energy was stored up in a spring bail or in a guide working by gravity. (2) I also hold (with Ward, J.) that, if this patent is construed broadly as Judge Hand held it should be, the present defendant's machines infringe.

It remains to inquire whether what Prof. Main summarily describes as "the prior art and prior usages" are so differently presented in this record as to compel a result which would free these defendants from the burden of Piper's patent while leaving McLaurin subject thereto. As is very often the case in patent

causes, the records of this court show that substantially everything shown to me was shown to Judge Ward on the motion for preliminary injunction, and, so far as prior usage or trade practices were concerned, he has summed them up in his memorandum, when he speaks of "the prior use of gummed tape for sealing packages, the effect of the introduction of kraft paper, and the use of the Bruen machine" as reasons for (practically) refusing to give its usual effect to the then recent opinion of Judge Hand.

Having compared the mass of testimony on these subjects with the record in the McLaurin Case, I am of opinion that it is all what complainant's counsel call it, cumulative. There is more testimony than was before Judge Hand, but it is all of the same kind. Undoubtedly gummed tape for sealing packages was used before Piper's machine, and the very object of that machine was to further an already existing art. The result to be obtained was known. What Piper devised was a method of reaching that result. If his method was new, it makes no difference how old gummed fastenings are.

So far as kraft paper is concerned, it is, I think, demonstrated that the demand for the result attained by Piper was greatly stimulated by the introduction of the new paper; but it is also true that, before kraft paper became known, Piper and his assignee had built up a business with paper of Manila fiber. The patent is not on the paper, but on a method of using any gummed paper strip, and it is not apparent to me that the introduction of a new and cheaper and perhaps stronger vehicle has any effect upon the scope and meaning of a patent granted and operated under at an earlier date.

So far as the Bruen machine is concerned, it would require very clear evidence to convert a patented device which is not in itself an anticipation into a prior use by showing that that which was patented varied from that which was constructed and utilized. Messrs. Bruen and Webb did not stand cross-examination well, and it cannot be said that their testimony makes out a strong case. They have not succeeded in changing the Bruen device from a reference to a prior use, and, as a reference the Bruen patent has been considered by Judge Hand with great fullness. The result is that in my opinion the new or additional evidence adduced since the McLaurin decision does not change the question presented to and decided by Hand, J.

The real point at issue here is vigorously stated by Prof. Main in his comments on claims 2 and 5 of the patent in suit. Claim 2 declares as a part of the patented combination "a device which automatically moves the paper away from the moistening device," and claim 5 states as a portion of the combination "means for removing the free end of the paper which is adjacent to the surface of the moistening roller away therefrom." As to the first of these phrases, the witness says:

"The word 'automatic' or 'automatically' necessarily implies a definite and positive action of some kind, and not the result of a mere passive presence or stationary existence. We do not speak of a barrel as automatically holding water, or of a hitching post as automatically holding a horse, or of the pavement as automatically bumping the person who falls down upon it; and the automatic holding of the paper off the moistening roll as spoken of in the

specification refers merely to the end of a positive action and movement of the swinging frame."

As to the second phrase, he declares that it "evidently refers to some definite device which is not necessarily automatic," and he "cannot understand that this clause would apply to any fixed arrangement of guide pins or rollers which would break the free end of the paper away from the moistening roller by reason of such fixed position, unless the paper is pulled against the moistening roller by the operator during the use of the machine; at other times swinging away from the roller by reason of the natural stiffness of the paper. Such a construction certainly would not be properly described as means for moving the free end of the paper." This is the kernel of the whole controversy. · For present purposes it is enough to state that the McLaurin Case holds exactly the other way.

Complainant may take the usual decree.