NATIONAL BINDING MACH. CO. v. HARPER PAPER CO.

(Circuit Court of Appeals, Second Circuit. June 6, 1917.)

No. 243.

PATENTS ⊗⇒328—INVENTION—STRIP-SERVING APPARATUS.

The Elliott patent, No. 868,977, for a strip-serving apparatus, for supplying strips of paper gummed on one side, and moistening the gummed side of the paper so that it may be used for binding packages, *held* void for lack of invention, in view of the prior art.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the National Binding Machine Company against the Harper Paper Company. Decree for defendant, and complainant appeals. Affirmed.

The following is the opinion of Augustus N. Hand, District Judge, on final hearing:

This is a suit to enjoin the infringement of letters patent No. 868,977. The patent relates to a device for supplying strips of paper gummed on one side and moistening the gummed side of the paper, so that it may be used for binding packages. The claims relied upon are the following:

"12. A strip-serving apparatus adapted to serve strips of paper or the like for wrapping or binding packages, comprising a strip support, a strip moistener operatively related to said support and adapted to moisten the leading end of the strip as it passes the moistener from the support in the operation of the apparatus, and strip-severing means located to sever the strip in the rear of the moistener.

"13. A strip-serving apparatus adapted to serve strips of paper or the like for wrapping or binding packages, comprising a strip support, a strip moistener operatively related to said support and adapted to moisten the leading end of the strip as it passes the moistener from the support in the operation of the apparatus, and strip-severing means positioned with relation to the moistener and adapted to sever the strip in the rear of the moistened portion thereof, without necessitating further serving of the strip from the support after the moistening to effect the presentation of an unmoistened portion to such strip-severing means."

I am of the opinion that the foregoing claims of the patent in suit are void for lack of invention. The Piper patent, No. 700,816, seems to have differed little from the patent in suit, except for the fact that the knife was placed in the Piper device before rather than in the rear of the moistening pad, and in that device the paper was drawn by hand rather than served by a mechanism. In view of the state of the art as disclosed in the Loree patent, No. 546,961, the McDade patent, No. 519,650, and the Tzschucke and Engelmann patent, No. 687,928, in each of which there was a strip-serving device and knife in the rear of the moistening pad, I do not think the cutting of the strip in the rear of the moistener is a sufficient improvement over the Piper device to show invention. I furthermore do not think infringement has been proved. Where a combination involving such slight improvement and novelty is shown, it at best cannot be given the broad construction urged by complainant. The defendant seems to be right in saying that his device does not feed, wet, or sever the strip. All this must be done by hand, as in the Piper and other earlier machines, and not by any mechanism, such as the crank and rollers shown in the diagrams of the patent in suit.

The complaint must be dismissed.

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Lucius E. Varney, of New York City, for appellant.

I. M. Obreight, of New York City (Everett E. Kent, of Boston, Mass., of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

PER CURIAM. This is a suit for infringement of United States letters patent No. 868,977 for a strip-serving device granted to the complainant as assignee of Elliott, the inventor. The claims in issue are 12 and 13, but it will be necessary only to state the latter:

"13. A strip-serving apparatus adapted to serve strips of paper or the like for wrapping or binding packages, comprising a strip support, a strip moistener operatively related to said support and adapted to moisten the leading end of the strip as it passes the moistener from the support in the operation of the apparatus, and strip-severing means positioned with relation to the moistener and adapted to sever the strip in the rear of the moistened portion thereof, without necessitating further serving of the strip from the support after the moistening to effect the presentation of an unmoistened portion to such strip-severing means."

Although the device for feeding the dry end of the tape forward so that it can be grasped by the fingers was stated in the specification as one of the objects of the invention, it is entirely omitted in the claim. We will assume, however, that it should be treated as included. Patents for tape-moistening machines are numerous and have been several times before the courts in this circuit. National Binding Machine Co. v. McLaurin (C. C.) 186 Fed. 992; Same v. Eisler (D. C.) 197 Fed. 175; Same v. Larkin, 233 Fed. 998, 148 C. C. A. 8. The District Judge apparently thought that the tape is continuously served in Elliott's device by a mechanism indicated on the figure by a handle *17* and a pawl and ratchet *18* and *21*, whereas this mechanism serves the dry end of the tape after it has been severed only far enough forward to pass between the presser and the moistener, where it can be grasped by the fingers, and from that point on the tape is served by hand. The operation of the defendant's device is exactly similar, except that the first step, to wit, the serving of the dry end of the tape forward, so that it may be grasped by the fingers, is done not by a mechanism, but by the application of the fingers to the tape. We hardly think this difference sufficient to avoid infringement.

The real ground, however, of Judge Augustus N. Hand's decision, is that the device involves no invention, and in this we concur. The placing of the cutting knife behind instead of in front of the moistener, as in Piper, was a mere mechanical improvement. If the U-shaped arm were made to swing backward far enough to admit the fingers, the dry end of the tape could be drawn out by them and, if room enough was not left it was not invention to use the handle, pawl, and ratchet to serve the dry end of the tape forward to a point where it could be grasped by the fingers.

Decree affirmed.