## S. S. STAFFORD, Inc., v. THADDEUS DAVIDS INK CO., Inc.

(Circuit Court of Appeals, Second Circuit. February 18, 1920.)

No. 168.

1. Patents ⊝⇒328—Claims for bottle stopper or pour-out valid and infringed.

Claims 2 to 7, inclusive, of the Deppermann patent, No. 1,310,405, for a bottle stopper or pour-out suitable for ink containers, including a metal band, the lower part of which holds the perforated stopper and bottle mouth firmly together, while the upper portion holds the registering pour-out in rotatable relation to the stopper, *held* valid and infringed.

2. Patents ⊝⇒178—Invention entitled to range of equivalents commensurate with novelty.

Where the bottle stopper invented by plaintiff was new, ingenious, and apt for commercial success, it was entitled, like other inventions, to a range of equivalents commensurate with the novelty exhibited.

3. Patents ⊝⇒168(2)—Claims of renewal patent, describing competitor's article, will be strictly construed.

Claims allowed on renewal of application for patent once allowed, drawn to read directly on what a competitor had just put out, will be closely scanned and strictly construed, but cannot be disregarded, if they naturally grow out of the specifications.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by S. S. Stafford, Incorporated, against the Thaddeus Davids Ink Company, Incorporated. From a decree for plaintiff, defendant appeals. Affirmed.

Appeal from decree in equity holding valid, and infringed by defendant, claims 2 to 7, inclusive, of Deppermann patent, No. 1,310,405, for which application was filed November 29, 1913, renewed February 24, 1919 (within the statutory period), and issued July 15, 1919. The subject of patent is a "pour-out" or "bottle stopper" especially suitable for ink containers.

Both parties are makers and sellers of inks; Deppermann is an employé of Stafford, and that company put on the market the article made under the patent in suit, about the middle of 1915. As plaintiff is a large maker of ink, the device promptly became known—among others—to one Silverthorne, who before that time was working over bottle stoppers. In 1918 Silverthorne agreed to furnish stoppers to defendant; they were put on the market in January, 1919, a patent having been applied for February 9, 1918, which issued August 26, 1919 (Silverthorne, 1,314,489).

Plaintiff procured specimens of the Silverthorne stopper as soon as defendant sold them, and shortly before Deppermann renewed his application. This action was begun promptly on issuance of patent. Deppermann's application, as filed, propounded very numerous claims, which, though amended repeatedly, were all rejected, except what is now No. 7.

----

⊝⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This was allowed April 2, 1915, and all efforts to get through additional claims failing, the patent was allowed May 29, 1917, with this one claim which is as follows: "In a device of the character described, the combination with a pour-out stopper having a liquid vent and an air vent, the said stopper divided into separate upper and lower members, of an embracing ring adapted to rigidly clamp the lower member to the bottle and hold the upper member loosely whereby the upper member is permitted to rotate on the lower member, an "open-and-shut" indicator comprising an index on the upper member, and "open-and-shut" stations arranged on said securing ring, and means integral with the lower member co-operating with means integral with the securing ring, whereby the relation of the lower member to the ring is determined."

Plaintiff (which apparently controlled Deppermann) let the application lapse for nonpayment of fees, and renewed only after the defendant's Silverthorne stopper had been examined. The renewal found more official favor than the original, and the other claims in suit were all offered, presumably drawn, and certainly allowed, after applicant or his counsel had studied Silverthorne. Of them, No. 4 is a good example:

"A pour-out for bottles comprising in combination a lower and an upper member having corresponding passages and relatively rotatable, and a two-part ring having one part engaging the upper member to hold it from vertical movement while permitting horizontal rotation, and the other part securing the lower member rigid to the bottle and interlocking means preventing relative rotation of the lower member and said ring."

The second claim is much like it, except that for "two-part ring" is substituted the phrase "annular fastening member," plus a description of what the "member" does. It is found as a fact, that these claims were drawn with an eye to Silverthorne's device, and in the hope of rendering 'easier victory in this or a similar suit.

The Silverthorne patent contains numerous claims, of which the following (No. 17) gives perhaps the simplest description of what the lower court held to infringe:

"An attachment designed to be affixed to a bottle and including a retaining ring, a valve seat fitted within said ring, a valve mounted for rotary movement on said seat, said valve including a base part rotatably mounted within said ring and held to the seat thereby and an upper part extending above said ring, said upper part constituting a finger piece for rotating the valve, said valve provided with a liquid discharging passageway opening therefrom through the finger piece."

W. P. Preble, of New York City, for appellant.

Harry E. Knight, of New York City, for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] Viewed in perspective, Deppermann's difficulties in the office are easy of understanding. His specification never changed; what he had achieved was and is, as a visible, mechanical thing, both plain and simple; but he insisted on claims which usually defined the thing in terms (as his solicitor put it) of function, or, as it seems to us, of result. The seventh claim defined the means by which result was reached, and was therefore properly allowed.

The patentee's addition to human knowledge is this: Ink is a fluid subject to evaporation and corrosive of metal; it is therefore desirable to keep the bottle, when not in use, tightly stopped, and to pour, through some nonmetallic substance, a thin stream. His device belongs to an old class of "pour-outs," wherein what may be called the bottle "cork" is perforated with an air passage and an ink passage,

which register with similar pasages in a relatively rotatable spout; when in register, ink will flow out on proper tipping; when out of register, the bottle is tight.

There is another commercially desirable thing which is effected by this device. Ink makers wish to sell as many ink bottles as possible; therefore, if a "pour-out" is put on the full bottle, which cannot be replaced, if removed, the "non-refillable" bottle is produced. This was old, through the device of not inserting the stopper into the bottle neck, but of binding it to the bottle top by a tight metal band external to and uniting stopper and bottle top.

Deppermann's "embracing ring," "annular fastening member," or "two-part ring" is a metal band, of which the lower part holds firmly together the perforated stopper and the bottle mouth, while the upper portion—of reduced diameter—holds the registering "pour-out" in loose, and therefore rotatable, relation to the firmly fixed stopper. This "embracing ring" was a new idea; it made the stopper embody a new combination, and we agree with the court below that it displays patentable invention.

Silverthorne arrives at confessedly the same result, by securing to a "pour-out," or spout (old, as is Deppermann's), rotation relative to the stopper, by a "retaining ring" which fits loosely over the "pour-out" base. But this device, as just indicated, and claimed in the quotation (supra) from Silverthorne's patent, will not fasten to a bottle by anything described; but (says the specification) it may be "fastened thereto by any conventional ferrule fastening device," and accordingly, in the actual thing complained of, it is secured to the ink bottle by a metal band, which grips both bottle mouth and "retaining ring" and makes all tight whenever the spout is out of register.

Whether this identity of result is reached in the same way depends on finding first the inventive thought that vitalizes the patent, next asking whether the means of applying that thought have been appropriately defined in the claim, and then inquiring whether defendant's means are within whatever range of equivalents patentee is entitled to.

[2] Deppermann's one inventive thought was to put into a structure, unitary when affixed to a bottle, the stopper, registering spout, and embracing ring; he did appropriately define that thought in claim 7, and did it long before Silverthorne; and he thereby made something new, ingenious, and apt for commercial success. Such an invention, like all others, is entitled to a range of equivalents commensurate with the novelty exhibited; and here the novelty is not great, but considerable.

Defendant has sold a device which only transfers the loose spout retention element of Deppermann from his integral extension of the outside ring to a separate ring, which fits inside of the outer ring defendant actually uses. It has split one of Deppermann's elements in two; but the two parts are and must be joined in work, and when so joined do the same thing in the same way as does Deppermann's. It has been easier to describe what it complained of in terms of Silverthorne's patent; but that is mere convenience. We are concerned only

with what defendant has sold; the later patent does not vary the legal problem.

We therefore agree with the court below that infringement exists as to the seventh claim.

[3] As for the rest the plain effort of plaintiff to "lick into shape" some new claims that would read directly on what a competitor had just put out, is not attractive, and justly leads any court to scan closely claims so composed. Lyon, etc., Co. v. Hartford (D. C.) 247 Fed. 524, affirmed 250 Fed. 1021, 162 C. C. A. 664.

Claims 2 to 6 of this patent are to be read in the light of the facts, and strictly construed; but the procedure was within the letter of the statute, and they cannot be cast out, if they do naturally grow out of the specification. We think they do, if "two-part ring" and annular "fastening member" be taken to mean no more than the "embracing ring" of claim 7. Nevertheless infringement remains, because what defendant does is, even within a narrow range, the plain equivalent of the one vitalizing element of Deppermann's invention.

Decree affirmed, with costs.