**VOICES, Inc., v. UNEEDA DOLL CO.**

**SAME v. WELL MADE DOLL CO.**

Circuit Court of Appeals, Second Circuit.
May 6, 1929.

Nos. 293, 294.

C. P. Goepel, of New York City, for appellant.

Shlivek & Brin, of New York City (Max Shlivek, of New York City, of counsel; Maurice Block and Saul S. Brin, on the brief), for appellees.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge. These appeals are from final decrees dismissing bills in equity for infringement of patents No. 1,507,826 and No. 1,588,354. A separate bill was filed against each appellee, and separate answers were interposed by them. Claims 1, 2, 11, 12, 13, 14, and 15 are claimed to be infringed by the appellees' Up-to-Date devices, and claims 2, 11, and 12 by the appellees' so-called German devices of the first patent.

Prior to these suits, in adjusting a previous litigation, the appellees each agreed in writing to admit the validity of the first patent and all the claims thereof, and agreed that they would not infringe the same, nor contest the validity or scope thereof, directly or indirectly. The devices are installed in dolls for simulating the crying sound of a baby—its pronouncing of ma-ma—and comprises a flexible bellows, a short tubular casing in which the bellows is inclosed, and which serves both to operatively support the bellows and prevent foreign matters, such as the stuffing of the doll, from interfering with the proper function of the bellows. One end of the bellows is anchored, while its other end is free to move, and the anchored end of the bellows is closed by an anchoring disc, while the free end is closed by the weighted disc. Either disc, weighted or anchored, is provided with an opening, in which is placed a sounding reed. When in an upright position, the weight will act, upon the influence of gravity, to fully expand the bellows, whereby a volume of air will be entrapped, and, when the device is inflated, the weight will collapse the bellows, forcing the entrapped air through the reed, producing the sound.

The claims of this first patent in suit, No. 1,507,826, have, as new features in devices of this kind (1) a conical bellows; (2) common closure for the bellows and casing; (3) utilizing pressure exerted between the closure disc and the casing to anchor the bellows to the casing; and (4) utilizing pressure exerted between the closure disc and the casing to effect a leak-proof jointure between the bellows and the inclosing disc.

The prior art reveals the Lloyd patent, No. 1,277,229, which had a cylindrical bellows, necessitating that the bellows be separated from the casing with a wide circular space. Lloyd closed his bellows by oné disc, and then closed the circular space between the bellows and the casing by a separate disc, to prevent foreign matter entering the same and blocking the operation of the bellows. The inventor, in the patent in suit, distinguishes his invention from Lloyd's by providing a common closure member for the bellows and the casings; that is, the common member closed the casing, so that foreign matter could not enter the chamber, and in this the bellows works, and it also closed the end of the bellows. He used a common closure member, because of his conception of a conical bellows of sufficient diameter at one end to abut the inner surface of the casing.

In claim 14, it is provided that one end edge of the flexible wall is inwardly turned over the margin of the head and secured thereto, and the other end edge of the flexible wall is outwardly turned over an end edge of the casing wall, and means are provided for closing the latter end of the casing and fixing the edge of the bellows wall thereto. In claim 15 frictional clamping means for effecting an air-tight seal between the closure member and the flexible body wall of the bellows is provided; also a gravity movable head for the other end of the bellows, and frictional clamping means connecting the latter end of the flexible body wall of the bellows to the head is provided with a sound reed, through which the air is expelled from the bellows in the gravity movement of the head. Thus the inventor advances the idea of the frictional clamping means for effecting an air-tight seal. Other claims, 1, 2, 11, 12, and 13, are in substantial accord.

The second patent in suit, No. 1,588,354, is directed to the bellows head or weighted end of the bellows, and provides a frictional clamp holding the movable or the weighted end of the bellows to the weight. Claim 5 calls for a bellows structure which has a tubular flexible wall, a head for one end of the bellows, and a clamping member adapted to engage the bellows wall and frictionally clamp it against the head.

The nearest patent of the prior art was Lloyd's No. 1,277,229. There the inventor used a tubular casing and a flexible bellows, which was formed of a cylindrical tube of the same diameter throughout. The bellows was closed at one end by a small disc. In applying the closure disc, the bellows was first placed in a mandrel, one of the closure discs was there inserted in the end of the bellows, and then the protruding edges of the bellows at that end were turned over and folded or pleated against the outer face of the disc and glued together. The mandrel was then withdrawn, and the closure disc was inserted in the opposite end of the bellows, after which the protruding edges of the bellows at that end were turned over the disc and glued together. The closure disc of the bellows was then glued to a disc of considerably larger diameter, by which the bellows was anchored to the casing; the larger disc was of a size to pass freely into and from the casing, and was attached to the casing solely by means of glue. The larger disc served to close the relatively wide circular gap between the bellows and casing, so that foreign matter, which might interfere with the operation of the bellows, could not enter into the chamber in which the bellows moved.

At that time the only bellows known to the art was formed of a cylindrical tube, and to insure efficient operation it was necessary to provide a casing of considerably larger diameter than the bellows, in order to provide a wide circular clearance between the bellows and the casing, or otherwise the disc at the free or weighted end of the bellows would impinge upon the inner wall of the casing, rendering the bellows inoperative. There were objections to this device. The inventor of the patent in suit conceived that by using a frustro-conical bellows, having the end anchored to the casing, of sufficient diameter to abut the inner face of the casing, that end of the bellows could be anchored directly to the end of the casing by a single disc, which additionally served as a common closure member, both for the end of the bellows and the end of the casing, thus dispensing with two discs of different diameters, one to close the bellows and the other to close the casing, and the difficult folding and gluing steps which were required with the use of the cylindrical bellows of the prior art. This was found by the art to effect economy in time, labor, and materials, and provided a more simple, compact, durable, and efficient construction. It was more than an agroupment

of old elements, for it brought into use two new elements, a conical bellows and the common closure for the bellows and casing. He secured a novel weighted end of the bellows, by clamping the smaller end of the conical bellows to the weight, instead of gluing it, as had been done. This combination of elements—some old and some new—should receive a liberal construction. Edwards Mfg. Co. v. Nat. Fireworks Dist. Co., 272 F. 23 (6th C. C. A.). The claims are entitled to fair and reasonable interpretation, such as will vitalize the grant. Eibel Process Co. v. Minnesota & Ont. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523; Paper Bag Patent Case, 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122; H. D. Smith & Co. v. Peck, Stow & Wilcox Co., 262 F. 415 (2d C. C. A.).

The Up-to-Date devices are of two types, one having a casing, a conical bellows having its end edge passing over the end of the casing, and a closure member in the form of a cup pressing the bellows against the casing, and the lip of the cup pressing against an end edge of the casing, and also against the bellows, whereby the conical bellows is held against the casing, and the end of the bellows is closed by the cup, and the cup at the same time closes that end of the casing. The other type is practically the same. The cup in each type closes the other end of the bellows; the open end of the casing presses the bellows against the casing and provides an air-tight seal. The cup is a common closure member.

In the German devices, the juncture of the casing wall, bellows, and closure disc is at an end edge of the casing wall. The bellows is pressed by the disc against the inside of the casing wall, and the disc is to some extent by its own pressure affixed against the inside wall of the casing. The disc is of slightly larger diameter than the inside of the casing bore, and pressure must be applied to force the disc into the casing which holds the bellows tight. The departure thus resulting in the interior wall of a casing forces a new end edge, over which the bellows passes and against which it is pressed by the disc; the disc seating itself upon this newly formed end edge. The shoulder so formed acts to prevent movement of the disc into the casing, and serves to grip the disc to the casing. Glue is used, but this does not avoid infringement. It is largely an additional air-sealing means, to make more perfect that which is carried out by the co-operation of the parts. These devices embody the essential features of the invention of the first patent. The Up-to-Date devices have one edge of

the flexible bellows wall turned inwardly over a margin of the bellows head, and clamped thereto by the metal cup, while the other end edge of the flexible bellows wall is turned outwardly around an end edge of the casing wall, and is secured thereto by the cup by friction-al-pressure, and constitutes a common closure for this end of the casing and bellows chamber. The cup used is the equivalent of the closure plate shown in the patent in suit. This cup embodies the preferred form of the patent, the outwardly flaring lip, which, by reason of its coaction with an end edge of the casing wall, prevents the possibility of the cup being forced into the casing.

The Up-to-Date devices have the advantage of having the flexible bellows wall turned in reversed direction over the edge of the air-expelling head and the casing end, respectively, and thereby facilitate the ease and rapid assemblage of parts of the bellows structure in connection with the casing wherein the bellows is housed or inclosed. In the double cylinder form of the Up-to-Date device, the bellows is folded over an end edge and outer side of the smaller or inner casing. In both forms, the disc or cup presses against the inside of the casing. The Up-to-Date device describes the Lloyd way, and follows the patent in suit, in that the junction of bellows walls and casing wall is at an end edge of the casing. When the Up-to-Date cup is placed in a position to frictionally press the bellows against the casing wall, the bellows is held in position and the end of the casing is closed for all purposes to provide an operative structure wherein the bellows can expand and contract and thereby creates a sound. This insures the inventive operativeness.

Another cover is provided by the Up-to-Date device, a cap, but this is surplusage from the invention viewpoint. The cup disc closes the bellows and casing. This addition of a part does not avoid infringement. Stafford, Inc., v. Thaddeus Davids Ink Co., 264 F. 111 (2d C. C. A.); Auto Vacuum Freezer Co. v. Sexton Co., 239 F. 898 (2d C. C. A.); Bossert Elec. Const. Co. v. Pratt Chuck Co., 179 F. 385 (2d C. C. A.). In appropriating the common closure member, the German device has taken the substance of the invention, and it is immaterial whether they apply a coating of glue as an additional means of holding the common closure member. The appellee's devices have all the elements of the claims in suit, and the mere fact of an additional cap does not avoid infringement.

The second patent in suit is also infringed. This patent provides means where-

by the frictional clamping element of the flexible bellows wall is tightly secured in connection with the bellows head by a frictional clamping ring, so that any possibility of accidental separation of its parts will be effectively obviated. The weight, which is a plain disc, has connected therewith the flexible tubular wall of the bellows. The end of the bellows wall overlies the peripheral face of the weighted disc, and is folded inwardly over the outer face of that disc. To clamp the bellows to the disc, there is provided a member having a marginal flange formed with two annularly disposed gripping surfaces, one of which clamps the end of the bellows to the outer face of the disc, and the other of which clamps the end of the bellows to the peripheral face of the disc. Thus there is provided an air-tight jointure formed between the weighted disc and the bellows by a durable and efficient means, eliminating the use of adhesions and tacks required in manufacturing prior art devices. Claims 4 and 5 provide for these elements. The means used are the tubular bellows, the angularly related peripheral and outer face of the disc, and the clamping member, which has a clamping face juxtaposed to the peripheral face of the disc, and the stop juxtaposed to the outer face of the disc to limit movement of the member. Nothing in the prior art referred to suggests this idea of construction. Only the Up-to-Date devices are charged to infringe this patent, and this charge is well founded. The appellees use a little more metal and stamp out a central disc, but it operates in the same way when stamped out. This invention, although simple, is entitled to protection. H. C. White Co. v. Morton E. Converse & Son Co., 20 F.(2d) 311 (2d C. C. A.); International Banding Machine Co. v. American Bander Co., 9 F.(2d) 606 (2d C. C. A.).

Decrees reversed, with costs.