**VOICES, Inc., v. UP–TO–DATE MFG. CO., Inc. (two cases).**
**Nos. 4213, 4214.**

Circuit Court of Appeals, Third Circuit.
April 29, 1930.

C. P. Goepel, of New York City, for appellant.

C. C. Cousins, of New York City (Morris Kirschstein, of New York City, of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below the owner of patent No. 1,507,826, issued September 9, 1924, to Leo J. Grubman for a sound-producing device for dolls, and of patent No. 1,588,354, issued June 8, 1926, to the same patentee for sound-producing device, filed two bills against the Up-To-Date Manufacturing Company, Inc., for infringement thereof.

Grubman's devices are aptly described in the opinion in the Second Circuit, where these patents were involved in Voices, Inc., v. Uneeda Doll Co. (C. C. A.) 32 F.(2d) 673, as follows: "The devices are installed in dolls for simulating the crying sound of a baby—its pronouncing of ma-ma—and comprises a flexible bellows, a short tubular casing in which the bellows is inclosed, and which serves both to operatively support the bellows and prevent foreign matters, such as the stuffing of the doll, from interfering with the proper function of the bellows. One end of the bellows is anchored, while its other end is free to move, and the anchored end of the bellows is closed by an anchoring disc, while the free end is closed by the weighted disc. Either disc, weighted or anchored, is provided with an opening, in which is placed a sounding reed. When in an upright position, the weight will act, upon the influence of gravity, to fully expand the bellows, * * ' and, when the device is inflated, the weight will collapse the bellows, forcing the entrapped air through the reed, producing the sound."

The foremost advance in this industry, prior to Grubman, was the doll of Lloyd embodied in his patent No. 1,277,229, granted August 27, 1918. Referring only to those features of Lloyd's device which are here pertinent, we note that Lloyd's bellows was cylindrical throughout and of the same diameter, with the result that the enveloping casing had to be much larger so as to permit expansion of the cylinder. It necessitated two separate closure discs, one for the bellows, another for the space between cylinder and casing, to shut out foreign matter, which prevented bellows expansion. The device was necessarily handmade; its intricacies necessitated time, the tedious labor of successive gluing operations, as well as a number of other operations. It was restricted to small output, relatively high cost, and fragile construction. An enumeration of its shortcomings is obviated by reference to the detailed recital thereof in 32 F.(2d) 674. As there also stated, the invention of the (Grubman) patent disclosed that by using a frustro-conical bellows, having the end anchored to the casing, of sufficient diameter to abut the inner face of the casing, that end of the bellows could be anchored directly to the end of the casing by a single disc, which additionally served as a common closure member, both for the end of the bellows and the end of the casing, thus dispensing with two discs of different diameters, one to close the bellows and the other to close the casing, and the difficult folding and gluing steps which were required with the use of the cylindrical bellows of the prior art. It eliminated the tedious glue steps and indeed the use of glue. This is important because glue gets brittle and when brittle cracks, and when it cracks breaks the bellows, and when the bellows breaks air enters and the function power of the mechanism is destroyed. Moreover, in the Lloyd glue device there are eleven steps or movements of manufacture; in the Grubman device there are but six, which, measured by man power or girl power, result in one girl making the Grubman device and doing the work of three girls making the Lloyd device. The breakage of the Grubman device and the consequent return and money loss was less than in the Lloyd device, and, finally, four competitive manufacturers took licenses under the Grubman patents and since 1925 these licensees have sold over 22,000,000 of the patented structures. All this was found by the art to affect economy in time, labor, and materials, and provided a more simple, compact, durable, and strong construction. It was more than an assembling of old elements, for it brought into use two new elements, a conical bellows and the common closure for the bellows and casing. It secured a novel weighted end of the bellows, by clamping the smaller end of the conical bellows to the weight, instead of gluing it, as had been done.

To our mind, the advance made by Grubman involved invention. His compact, readily made, durable device was not a mere reassembling of old parts, but was a discarding of features which really crippled the old art in efficiency, made his disc perform new and broader functions, and resulted in a cheaper, better, larger, and less fragile product. It substituted mechanical for glue closure. The advance made by Grubman centered in using a tapering, conical bellows, instead of the cylindrical, uniform diameter, one of Lloyd. But in the wake of this simple change there followed the advantages that make this suit a matter of real substance—to the inventor to monopolize the improvement, to the infringer to share it.

The second patent of Grubman is a distinct improvement, and not a double patenting, of his first device, in that it provides a frictional clamping ring having a marginal flange with two annularly disposed gripping surfaces, one of which clamps the bellows to the outer face of the disc and the other of which fastens the peripheral face of the disc to the end of the bellows. We are of opinion that both patents are valid, and as infringement is not contested if validity be shown, the plaintiff is entitled to injunctive and accounting relief. The record will therefore be remitted to the court below for further action in accord herewith.