**BETTER PACKAGES, Inc., v. L. LINK & CO., Inc., et al.**

No. 104.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1934.

Hammond & Littell, of New York City (Nelson Littell, of New York City, of counsel), for appellant.

Hellinger & Reichart, of New York City (Emanuel H. Reichart, of New York City, of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellant moved to punish appellees for contempt or in the alternative for a supplementary injunction to enjoin further infringement of reissue patent No. 18,322. The patent is for tape-serving machine. In a suit by the appellant against the appellees, claims 14 and 15 of his patent No. 1,194,752 and claims 1 to 8 of the reissue patent No. 18,322 were held valid and infringed. After the service of an injunction which restrained the manufacture and sale of "any gummed tape serving machine containing or embodying the invention set forth and described" in the letters patent, the appellees manufactured and sold the changed machine which is now claimed to be a continuing infringement.

In finding invention in the suit, the court found that prior to the patent in suit, the art knew of such machines consisting of a "receptacle to hold the roll of gummed paper; a feeding means to pull the strip from the roll and to push it forward where it passed between the cutting blades and through a moistening device; and, finally, a means for actuating the feeding and cutting devices so

that a section of strip, already moistened and severed was made available for pasting on the package or carton. * * * The specified claims in patents No. 1 and No. 2 relate to the moistening device and the specified claims in patent No. 3 relate to the feeding means." And after reviewing the known parts of the machine, the court said: "There was thus presented to the prior art the problem of eliminating the hiatus caused by frequent use of the moistening device. This was accomplished in some instances by a manual readjustment of the plate or of the brush so as to bring them into contact again. Krueger [the inventor] was the first to solve the problem of having the plate supported by the top of the brush against gravity, so that as the brush assumed a bent position from frequent use, there would be an automatic, instead of a manual, readjustment of the plate and a continuance of the contact relation. This obviated loss due to operators negligently omitting to make a necessary manual readjustment * * * Under Krueger's plan the pressure remained constant and equalled the weight of the plate."

The court pointed out prior difficulty arising from the lack of automatic adjustment, the success attained by the appellant, and that in order to retain the feature of self-adjustability so that the plate might automatically remain in contact with the brush, even after the latter lowered its position from frequent use, the inventor provided that the other edge of the plate be unsupported except by the brush with the result that with every change of the latter's position, the plate was kept in contact with it. This presupposed that the permanent support of one edge of the plate be a pivot or rotatable joint so as to permit the movement of the other edge. The court found this device to involve inventive thought and not merely the work of a skilled mechanic. Infringement was found because the appellee had substantially copied the moistener shown in the reissue patent.

The appellee's new construction, now complained of, consists of the use of a device intended to accomplish the same results as designed and intended by the patent. Instead of using a fixed brush and a pivoted presser plate as in the enjoined device, appellees use the fixed presser plate with a pivoted brush urged upwardly against the presser plate by a spring, thus merely having reversed the process. This we think is an infringement of the reissue patent No. 18,322 which relates to "mechanism for delivering pieces of gummed paper tape in a moistened condition ready

for application to parcels, wrappers and the like" and provides "a self-adjusting pressure member * * * to hold the tape in engagement with the moistening member so that the tape engages the moistening member with substantially uniform pressure irrespective of variations in the position of the moistening member."

The patent shows a brush 55 and the weighted flap piece 56, and neither in the specification nor the claims was it limited to the specific construction shown. The machine in question must be ready for instant application of the moisture to the end of the advancing tape, which is pushed through the unit from the rear. And, at the same time, it must not offer sufficient resistance to the path of the tape to cause the thin flexible tape to buckle or resist passage through the moistening device. If the moistener has too much pressure between the brush and presser plate, the tape will buckle and cannot be pushed through. If the self-adjusting relation of the brush and the presser plate is omitted, the moistener will cease to function properly because the pressure will become too light or the brush will bend away from the presser plate breaking the contact causing the brush to dry out and result in the failure of the moistening function.

The invention provided a workable brush moistener for use in these machines in which the throat of the moistening unit is always in alignment with the path of the advancing tape and in which means for automatic self-adjustment between the brush and presser plate are provided. The two are automatically maintained in contact with a substantially uniform pressure at all times, except when the tape is passing through. Appellees originally had a presser plate bearing down upon the brush. For the use of this they were enjoined. Now they have a fixed presser plate with a self-adjusting brush urged upwardly against the presser plate, and this we think falls within the claim of the patent and is an obvious equivalent structure to that specified. Below the patent was limited to the specific embodiment of moistener consisting of a brush with a pivoted presser plate resting thereon.

Claim 1 provides, among its means, "a presser element jointly forming a tape receiving mouth, supporting means for said elements supporting the brush element at one side of the path of tape movement and the presser element at the opposite side thereof so that the mouth of the moistening means is always in alignment with the path of tape

movement to receive the end of the advance tape, said supporting means and presser element jointly forming self-adjusting means for maintaining the gummed side of the tape in engagement with the moistening surface of the brush when the tape is present between them and for maintaining the brush and presser element in contact with one another to maintain a film of water at the tape engaging end of the brush when no tape is present between them." The changed construction is an obvious equivalent to get the full results contemplated and obtained by the patentee. Although the use of a leaf spring is a different construction, still it is the equivalent of the appellant's construction. The appellees' brush element and presser element jointly form a V-shaped tape receiving mouth which, within the language of claim 1, is "always in alignment with the path of tape movement to receive the end of the advancing tape * * *." The spring support for the brush and the fixed presser element jointly form "self-adjusting means * * * for maintaining the brush and the presser element in contact * * *." Claim 1 is not limited to a fixed brush and the pivoted presser plate but it covers "a brush element and a presser element [either of which may be a movable element] jointly forming a tape receiving mouth, * * * said supporting means and presser element jointly forming self-adjusting means for maintaining the gummed side of the tape in engagement with the moistening surface of the brush * * *."

Claims 1, 6, 7, and 8 cover any relative self-adjustability between the presser plate and the brush, whether the brush is stationary and the presser plate movable or the presser plate stationary and the brush movable. Apparently the inventor realized that his invention could be accomplished by various modifications of his original idea and so stated in his patent. To limit the patent, as was done below, disregards the function and principle of the rule of equivalents in the patent law. Consolidated Safety Valve Co. v. Crosby Steam-Gauge & Valve Co., 113 U. S. 158, 5 S. Ct. 513, 28 L. Ed. 939; Voices, Inc., v. Uneeda Doll Co., 32 F.(2d) 673 (C. C. A. 2); Tompkins-Hawley-Fuller Co. v. Holden, 273 F. 424 (C. C. A. 2). Moreover, it appears that the appellant in its commercial machines had movable presser plate with the fixed brush and also the fixed presser plate with the movable brush urged upwards against the presser plate by a seesaw weighted member. The appellees substantially copy this in their movable brush urged upwards against the presser plate by means of a leaf spring. This disingenuous pirating of the appellant's machine should be enjoined.

Although appellees' machine, modified after validity of the patent was adjudicated, is an obvious equivalent of that which the appellant's patent claims, we think that the facts disclose a case for the remedy of supplementary injunction rather than contempt. Frank F. Smith Metal Window Hardware Co. v. Yates, 244 F. 793 (C. C. A. 2); Crown Cork Co. v. American Cork Co., 211 F. 650 (C. C. A. 2).

Order reversed.