**BETTER PACKAGES, Inc., v. L. LINK & CO., Inc., et al.**

No. 180.

Circuit Court of Appeals, Second Circuit.

Jan. 14, 1935.

See, also (C. C. A.) 68 F.(2d) 904.

Hammond & Littell, of New York City (Edmund Quincy Moses, Nelson Littell, and Clarence M. Crews, all of New York City, of counsel), for plaintiff.

Warfield & Brown, of New York City (Donald L. Brown and Griffith Beems, both of New York City, of counsel), for defendants.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The first question presented for consideration is the effect of the delayed disclaimer as to claim 12 of patent No. 1,194,752, hereafter for convenience referred to as the first patent, and the failure to disclaim at all as to claims held to be invalid of patent No. 1,782,123, hereafter for convenience referred to as the third patent. An interlocutory decree was entered on October 3, 1932, pursuant to an opinion of Judge Coleman reported in (D. C.) 1 F. Supp. 132. This decree found claims 14 and 15 of the first patent valid and infringed and claim 12 thereof invalid; it found all the claims in suit of the third patent to be invalid, namely, claims 2, 3, 4, 8, 10, 12, 17, 25, 28, and 30; it sustained those claims of the reissue patent which were in suit. No appeal was taken by the plaintiff from the interlocutory decree. A disclaimer as to claim 12 of the first patent was filed on January 24, 1933. No disclaimer was filed at any time with respect to the invalid claims of the third patent. Because of this delay, the defendants contend that the first and third patents are wholly invalid. On the other hand, the plaintiff argues that with respect to the third patent it was privileged to withhold any disclaimer until after the decision of this appeal from the final decree, and with respect to the first patent the delay in disclaiming was not unreasonable.

In Ensten v. Simon, Ascher & Co., 282 U. S. 445, 51 S. Ct. 207, 75 L. Ed. 453, the Supreme Court had before it the same problem as is here presented, namely, the effect of a failure either to appeal from an interlocutory decree or to disclaim promptly the claims which that decree had held invalid. There, as here, it was argued that the patentee might await the final decree before appealing and in the meantime would be guilty of no unreasonable delay in withholding his disclaimer. But it was held that, by neither trying to vindicate his claim by appeal from the interlocutory decree nor admitting it false by promptly disclaiming, he lost the exemption from total invalidity of the patent offered by the disclaimer statute to those who act promptly (35 USCA §§ 65, 71). It is true that in the Ensten Case the defendant had appealed from the interlocutory decree so that it would have been easy and inexpensive for the plaintiff to have filed a cross-appeal; it is true also that the claim was declared invalid in a different suit, and that the plaintiff did file a disclaimer twenty-three months after the decree was entered. But these were facts not vital to the decision, and furnish no basis for a rational distinction between it and the present case. The plaintiff's argument that a patentee gains a better position by filing no disclaimer at all than by disclaiming late is wholly fallacious. It is not his tardy disclaimer which forfeits the patent, but the introduction of unpatentable claims; and forfeiture for this fault is excused by a prompt disclaimer. As stated by the Supreme Court, in the Ensten opinion at page 455 of 282 U. S., 51 S. Ct. 207, 210, "good faith and the spirit of the enactment demands" that a patentee whose pretensions have been held without foundation "act with such promptness as the circumstances permit either to vindicate his position or to relieve the public from further evil effects of his false assertion." Before appeals were permitted from interlocutory decrees, the patentee could vindicate his position only by appealing from the final decree, and therefore he did not unreasonably delay his disclaimer by awaiting the decision of such an appeal. To require it before in effect would deprive him of any appeal. See Page Machine Co. v. Dow, Jones & Co., 168 F. 703, 705 (C. C. A. 2). But now that appeals are allowed from an adverse interlocutory decree, the circumstances permit greater promptness. With respect to the third patent, we regard the case as ruled by the Ensten decision. See, also, Radio Condenser Co. v. Gen. Instrument Corp., 65 F. (2d) 458 (C. C. A. 2); Otis Elevator Co. v. Pac. Finance Corp., 68 F.(2d) 664 (C. C. A. 9). Patent No. 1,782,123 is therefore void, and the decree of dismissal as to it may be affirmed without considering the merits.

With respect to the first patent, the plaintiff contends that its filing of a disclaimer on January 24, 1933, was not unreasonably delayed. This was eighty-three days after the expiration of the thirty days allowed for an appeal from the interlocutory decree of October 3, 1932. In R. Hoe & Co. v. Goss Printing Press Co., 31 F.(2d) 565, the mandate of this court required the patentee to disclaim within thirty days after the expiration of time to petition for certiorari unless his petition should be granted. In the absence of special circumstances, such as existed in Minerals Separation v. Butte, etc., Mining Co., 250 U. S. 336, 354, 39 S. Ct. 496, 63 L. Ed. 1019, thirty days after expiration of time for appeal would seem ample time within which to prepare and file the document required by law to avoid forfeiture of the patent. Hence if the plaintiff's time to appeal commenced to run on October 3, 1932, the disclaimer should have been filed not later

than December 2d. A contention is made that the time was extended because on December 16, 1932, a corrected interlocutory decree was entered. This was the same in all respects as the original decree of October 3d except that it omits all reference to claim 28 of reissue patent No. 18,322. This claim had been withdrawn by the plaintiff during the trial, but the decree of October 3d inadvertently included it, holding it valid and infringed. After the time to appeal from the decree of October 3d had expired, the defendants, on or about November 25th, moved to correct this error pursuant to Equity Rule 72 (28 USCA § 723). The motion was granted and the corrected decree was entered. Within thirty days thereafter the defendants appealed therefrom, not questioning, of course, the elimination of said claim 28, but challenging only the order for an injunction and accounting under the other claims held valid and infringed in the original decree of October 3d. The plaintiff then moved in this court to dismiss the appeal on the ground that the defendants were really attempting to appeal from the decree of October 3d long after their time to do so had expired. This motion was granted without opinion; the order of dismissal being filed February 2, 1933. It was then our opinion, and it still is, that a motion for the correction of an accidental error, made after the time for appeal had passed, could not be used as a means to extend the defendant's time for appeal. See Larkin Packer Co. v. Hinderliter Tool Co., 60 F.(2d) 491, 493 (C. C. A. 10). Under Equity Rule 72 (28 USCA § 723), such a correction may be made "at any time before the close of the term at which final decree is rendered." It is inconceivable that months after the entry of an interlocutory decree a party may, by procuring the correction of an "accidental slip or omission" regain the neglected opportunity to appeal and thereby tie up the accounting which has been proceeding under the interlocutory decree. If the defendant's time to appeal from the decree of October 3d was not extended by the decree of December 16th, a fortiori the plaintiff's was not. Consequently the disclaimer of January 24, 1933, was unreasonably delayed and patent No. 1,194,752 also must be held invalid.

This leaves only reissue patent No. 18,322 for consideration on the merits. This patent is for a tape serving mechanism for serving, moistening, and cutting a strip of gummed paper to be used for sealing packages, cartons, and the like. Claims 1 to 8 are in suit. It may be that the machine as a whole was an improvement over anything previously known in this crowded art, but we are concerned only with claims relating to the moistening element. This consists of a brush having its butt end submerged in a reservoir of water, and a pivoted metal plate resting by gravity on the tip of the brush. Thus the pressure of the plate upon the brush is always uniform, even though the bristles become bent or worn by use. By capillary attraction a film of water is maintained between the plate and the brush, and the tape which is passed between them receives an even and uniform moistening. Claim 2, which may be taken as typical also of claims 3, 4, and 5, reads as follows:

"2. In combination, a device for applying moisture to tape, including a brush and a pivoted weighted member resting freely on said brush for forcing the tape into contact with the moistening surface of said brush."

The idea of a pressure plate resting by gravity upon the top of the brush was not new with Kreuger's reissue patent. His own earlier patent, No. 1,194,752, disclosed a slidable gravity-operated pressure plate. Claim 2 of the reissue patent differs only in requiring the pressure plate to be pivoted. The feature of a pivoted gravity-operated presser is shown both in the British patent to Pitney, No. 18,812, and the United States patent to Elliott, 868,797. It is true that Pitney's presser is hinged in a plane perpendicular to the line of movement of the tape and is provided with lugs to prevent it from resting too heavily on the brush. Whether it would require more than the ordinary skill of a mechanic to rearrange the Pitney device we need not decide, for the Elliott patent appears to be a complete anticipation of the claims now under consideration. Elliott describes his construction as follows:

"Pivotally supported upon the upper end of the standard 15 is an inverted U shaped arm having its free end projecting over behind the cutter 14 and adapted to bear upon the moistener 13 or upon a strip of paper led between the moistener 13 and the presser 20 at the end of the arm 19."

The "moistener 13" is not described and appears from the drawings to be a wick; but clearly it would involve no invention to substitute a brush for a wick, for these were well-known equivalents in the art. Judge Coleman distinguished the Elliott patent because it disclosed no means by which the presser might readjust itself to a new position of the wick or brush. We are unable to agree. So far as we can see, as the brush was worn down with use the presser would follow

it, keeping a constant contact. The plaintiff contends that it was impossible to force a tape between the presser and the wick. That might depend upon the designing of the presser and its arm, though Elliott did not expect it to be used that way. He intended the presser to be lifted so that the end of the tape could be pushed over the top of the brush; then the presser was dropped and the tape drawn out between the two. Whether this was a pull-feed rather than a push-feed device can make no difference, for the claims in suit do not distinguish between the two. It is true that Elliott does not declare that he relies upon the principle of capillary attraction to keep the brush moist; but that is immaterial since the principle will in fact be operative. Normally the presser will be upon the brush, for it is lifted only momentarily when the tape is inserted. Consequently the supposed new principle of operation, a pivoted presser "floating" upon the top of the brush, was fully anticipated.

We can see nothing else of novelty to sustain any of the claims in suit. Claim 6 adds the requirement that the brush be supported at a slightly inclined angle, and means for guiding the tape between the pressure member and the brush. Claim 7 is similar but requires the brush and pressure element to be relatively movable about an axis parallel to the normal position of the brush tip. Claim 8 calls also for a cover on the reservoir and a lip on the cover inclined upwardly for passing the tape between the pressure member and the brush. Claim 1 is the most complete, and in addition to the moistening means calls for tape-feeding means and tape-severing means; it describes the presser and brush as jointly forming a tape-receiving mouth, always in alignment with the path of the tape. Without considering each of the claims in detail, it will suffice to say that the substance of each of the additional features may be found in the patents to Pitney, Elliott, and Brownson, and Kreuger's own earlier patent. Claims 1 to 8 of reissue patent No. 18,322 are held invalid.

This patent was heretofore before this court in Better Packages v. L. Link & Co., 68 F.(2d) 904. After entry of the interlocutory decree of October 3, 1932, the defendants, endeavoring to avoid infringement of the claims held valid and infringed, manufactured and sold a machine of changed construction. Thereupon the plaintiff moved for an order punishing them for contempt, or in the alternative for a supplementary injunction to include their changed machine. This motion having been denied, the plaintiff appealed. This court reversed the order and held that the facts disclosed a case for the remedy of supplementary injunction rather than contempt. We said that the changed construction was "an obvious equivalent." Our opinion discussed only the question of infringement. No question of the validity of the patent was raised on that appeal; the briefs of the appellees made no mention of invalidity, and the record contained none of the prior patents which appear in the present record. Hence the issue of validity was not foreclosed by the former appeal. Other decisions dealing with patents in this same field may be found in National Binding Mach. Co. v. Larkin Bros., 233 F. 998 (C. C. A. 2), and National Binding Mach. Co. v. Harper Paper Co., 242 F. 939 (C. C. A. 2).

The decree is modified, and the bill dismissed as to all three of the patents in suit.