## OTIS ELEVATOR CO. v. PACIFIC FINANCE CORPORATION et al.

No. 6996.

Circuit Court of Appeals, Ninth Circuit.

Jan. 23, 1934.

Wallace R. Lane, of Chicago, Ill., William H. Hunt, of San Francisco, Cal., Edwin W. Sims and Clarence J. Loftus, both of Chicago, Ill., and Raymond I. Blakeslee, of Los Angeles, Cal., for appellant.

Frederick S. Lyon, Leonard S. Lyon, and Richard F. Lyon, all of Los Angeles, Cal., for appellees.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

Plaintiff, as assignee and owner of a patent No. 1,506,380 for an invention relating to a system and means for controlling electric elevators, obtained reissue No. 16,297, the patent in suit. Defendant Llewellyn Iron Works manufactured and installed in a building owned by defendant Pacific Finance Corporation a group of electric elevators, charged by plaintiff to infringe certain claims of the patent. The cause was referred to a master, who filed his report on February 25, 1930. He found five of the claims valid and infringed, one valid but not infringed and claim 37 invalid. To this report, defendant alone filed exceptions, among them, one to the master's failure to find noninfringement of claim 37. On May 1, 1931, long after defendant's exceptions had been argued and briefs had been filed with the District Judge but while the case was still under advisement, plaintiff filed a disclaimer of claim 37. Subsequently defendants moved to dismiss the suit on the ground that the patent was void because the delay in filing the disclaimer as to claim 37 of over fourteen months from the master's report was unreasonable. The denial of this motion [56 F.(2d) 850], is assigned as

error by defendants on their cross-appeal. The District Judge sustained the findings of the master that all the other claims were valid, but held that none of them were infringed. If we conclude that defendant's motion to dismiss should have been granted, it will be unnecessary to consider the question of the validity or infringement of the other claims in suit.

Defendant's motion was based on the ground that plaintiff's disclaimer was not seasonably filed according to the provisions of the disclaimer statutes. 16 Stat. 206, 207 (1870); Rev. St. §§ 4917, 4922; 35 U. S. C. §§ 65, 71 (35 USCA §§ 65, 71).[1] Plaintiff asserted an answer thereto, that the disclaimer was timely and sufficient thereunder. It now urges in addition that no disclaimer was necessary, because the invalidity of claim 37 was not due to the patentee having claimed "more than that of which he was the original or first inventor or discoverer," or, in slightly different phraseology, "in his speci-

[1] "§ 65. *Disclaimer.* Whenever, through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, a patentee has claimed more than that of which he was the original or first inventor or discoverer, his patent shall be valid for all that part which is truly and justly his own, provided the same is a material or substantial part of the thing patented; and any such patentee, his heirs or assigns, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer[a] of such parts of the thing patented as he shall not choose to claim or to hold by virtue of the patent or assignment, stating therein the extent of his interest in such patent. Such disclaimer[a] shall be in writing, attested by one or more witnesses, and recorded in the Patent Office; and it shall thereafter be considered as part of the original specification to the extent of the interest possessed by the claimant and by those claiming under him after the record thereof. But no such disclaimer shall affect any action pending at the time of its being filed, except so far as may relate to the question of unreasonable neglect or delay in filing it.

[a] 'disclaimor' should be 'disclaimer.' "

"§ 71. *Suit for infringement where specification too broad.* Whenever, through inadvertence, accident, or mistake, and without any willful default or intent to defraud or mislead the public, a patentee has, in his specification, claimed to be the original and first inventor or discoverer of any material or substantial part of the thing patented, of which he was not the original and first inventor or discoverer, every such patentee, his executors, administrators, and assigns, whether of the whole or any sectional interest in the patent, may maintain a suit at law or in equity, for the infringement of any part thereof, which was bona fide his own, if it is a material and substantial part of the thing patented, and definitely distinguishable from the parts claimed without right, notwithstanding the specifications may embrace more than that of which the patentee was the first inventor or discoverer. But in every such case in which a judgment or decree shall be rendered for the plaintiff no costs shall be recovered unless the proper disclaimer has been entered at the Patent Office before the commencement of the suit. But no patentee shall be entitled to the benefits of this section if he has unreasonably neglected or delayed to enter a disclaimer."

fication, claimed to be the original and first discoverer of any material or substantial part of the thing patented, of which he was not the original and first inventor or discoverer," but, as the master found, because the claim failed to describe the invention sufficiently to comply with Rev. St. § 4888, 38 Stat. 958 (1915), 35 U. S. C. § 33 (35 USCA § 33), set out in the margin.[2] To this defendants reply that, if the disclaimer statutes are inapplicable, the case is controlled by the principle of the earlier law that an invalid claim, even one valid only for indefiniteness, destroys the entire patent.

In the early English law, there is very little if any support for the broad principle upon which defendants rely. The use of claims as separate and distinct from the description of the invention, was a comparatively late development. As stated by Fletcher-Moulton, L. J., in British United Shoe Machinery Company, Ld., v. A. Fussell & Sons, Ld., 25 R. P. C. 631, 650 (1908), " * * * claims were by no means universal in the olden times, and even when used, the claims were extraordinarily general—usually a mere statement that the Patentee did not tie himself to the particular details." Even after the passage of the Patents, Designs, and Trade Marks Act of 1883, 46 & 47 Vict. c. 57, 1883, a "distinct statement of the invention claimed" was not regarded as obligatory until the requirement was emphasized by the Patent and Designs Act of 1907, 7 Edw. 7, c. 29, § 2. See Terrell, Patents (7th Ed. 1927) 118. The rule that a patent invalid in part is invalid in whole was first applied, not to patents including several distinct claims regarding the same invention, but to those which covered more than one invention. In such cases, all of the alleged inventions were deemed the single consideration for the grant of the patent monopoly; if one was invalid, the consideration failed and the whole patent was held void.

Hill v. Thompson, 8 Taunt. 375 (1818); Brunton v. Hawkes, 4 Barn. & Ald. 541 (1821). Similarly the description of the invention must be accurate and definite in order that the consideration for the grant may be entirely effective through complete disclosure to the public. Turner v. Winter, 1 T. R. 601 (1787); Newbery v. James, 2 Mer. 446 (1817); Simpson v. Holliday, L. R. 1 H. L. 315 (1866). When the invention was an improvement in a machine it was necessary to indicate the particular improvement in describing the entire machine, thus "distinguishing the new from the old." McFarlane v. Price, 1 Stark. 446 (1816); Bovill v. Moore, 2 Marsh. 211 (1816); Campion v. Benyon, 3 Brod. & B. 5 (1821); Foxwell v. Bostock, 4 De G. J. & S. 298 (1864). Perhaps from this developed the more general requirement that the patentee should "state distinctly what it is for which he claims the patent and describe the limits of the monopoly." Hastings v. Brown, 1 El. & Bl. 450 (1853). It is such delimitation of the extent of the monopoly which is the function of the modern claim. Avoidable ambiguity in the delimitation may, under the modern English cases, invalidate the entire patent. See Natural Colour Cinematograph Co., Ld. v. Bioschemes, Ld., 32 R. P. C. 256, 266, 31 T. L. R. 324 (1915); British Thompson-Houston Co., Ld. v. Corona Lamp Works, Ld., 39 R. P. C. 49, 38 T. L. R. 207 (1922). There is, however, no clear indication of a hard and fast rule that one indefinite or ambiguous claim invalidates the entire patent. Cf. Plimpton v. Spiller, 6 Ch. D. 412 (1877). In fact, it is now provided by statute that, if in an action for infringement the court finds some of the claims valid and infringed, it shall give relief with respect to those claims even though others may be invalid, except that it may exercise its discretion as to costs and the date from which damages are to be reckoned. Patent and Designs Act (1919) 9 & 10 Geo. 5, c. 80, § 9.

In the early American statutes and cases there is also little support for the general proposition that one invalid claim necessarily invalidates the entire patent. The Act of April 10, 1790, c. 7, § 6, 1 Stat. 109, 111, provided that the defendants in a suit for infringement "may plead the general issue, and give this act, and any special matter * * * in evidence, tending to prove that the specification filed by the plaintiff does not contain the whole of the truth concerning his invention or discovery; or that it contains more than is necessary to produce the effect described; and if the concealment of part, or the addition of more than is necessary, shall

---

[2] "§ 33. Application for patent; description; specification and claim. Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. The specification and claim shall be signed by the inventor."

appear to have been intended to mislead, or shall actually mislead the public, so as the effect described cannot be produced by the means specified, then, and in such cases, the verdict and judgment shall be for the defendant." In the Act of Feb. 21, 1793, c. 11, § 6, 1 Stat. 318, 322, the qualification was changed to read, " * * * which concealment or addition shall fully appear to have been made, for the purpose of deceiving the public;" also the additional defense was introduced that "the thing, thus secured by patent, was not originally discovered by the patentee," and the additional penalty imposed that "the patent shall be declared void." At first there was respectable authority to the effect that the act of 1793 had completely abrogated the common-law defense of insufficient description when there was no design to deceive the public. See Whittemore v. Cutter Fed. Cas. No. 17,600 (C. C. Mass., 1813). This view was later disapproved, in Grant v. Raymond, 6 Pet. 217, 8 L. Ed. 376 (1832). The necessity of distinguishing the new from the old was, however, never doubted; in the words of Justice Story, " * * * unless it be distinctly stated, in what that invention specifically consists, it is impossible to say, whether it ought to be patented or not; and it is equally difficult to know, whether the public infringe upon or violate the exclusive right secured by the patent." Lowell v. Lewis, Fed. Cas. No. 8,568, at page 1020 (C. C. Mass., 1817); Barrett v. Hall, Fed. Cas. No. 1,047 (C. C. Mass., 1818). There was also adopted from the English law the rule that a patent claiming several improvements in a machine was entirely void if one of the improvements was not really new. Moody v. Fiske, Fed. Cas. No. 9,745 (C. C. Mass. 1820). In the Act of July 4, 1836, c. 357, § 13, 5 Stat. 117, 122, specific authorization was given for the practice, already sanctioned by the Supreme Court in Grant v. Raymond, supra, of reissuing patents in order to cure insufficient or defective descriptions or excessive claims made without fraudulent intent. It was, however, in the act of 1836, sections 5, 6, that the claim as such was first differentiated from the general description of the invention. See Hovey v. Stevens, Fed. Cas. No. 6,746 (C. C. Mass., 1846). "There was thus established a system of patent law supposed to relate to the old form of patent with its single claim, but made in express terms to apply to the modern patent of many claims." Lowell, C. J., in Suddard v. American Motor Co., 163 F. 852, 854 (C. C. Mass., 1908). For this reason no general principle that one invalid claim necessarily invalidates the entire patent is to be found in the early law.

There are unquestionably various circumstances in which a claim may be inoperative without affecting the validity of the entire patent. In Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 301, 319, 29 S. Ct. 495, 501, 53 L. Ed. 805 (1909), it was held that the expiration of the life of one claim of a patent, because of the expiration of a foreign patent for the same invention, did not limit the life of other claims of the same patent. As is there said: "One claim may be valid, all the rest invalid,—invalid for the want of some essential patentable attribute. But what is good remains and is unaffected by its illegal associates." No disclaimer is necessary when the parts covered by the invalid claim are not material or essential parts of the invention. Hall v. Wiles, Fed. Cas. No. 5,954 (C. C. N. Y. 1851); or when the claim is invalid because the parts covered have been in public use more than two years prior to the patentee's application, Smith & Griggs Mfg. Co. v. Sprague, 123 U. S. 249, 8 S. Ct. 122, 31 L. Ed. 141 (1887); Whitney v. Boston & A. R. Co., 50 F. 72 (C. C. Mass. 1892). However, the specific question whether or not a claim invalid only for indefiniteness invalidates the entire patent appears to be an open one. That is may do so in extreme cases is indicated by the statement in Carlton v. Bokee, 17 Wall. 463, 472, 21 L. Ed. 517 (1873), that "where a specification by ambiguity and a needless multiplication of nebulous claims is calculated to deceive and mislead the public, the patent is void." That it will not always do so is suggested by Béné v. Jeantet, 129 U. S. 683, 9 S. Ct. 428, 32 L. Ed. 803 (1889), where in a patent of six claims, the court found that the specification was full and clear enough only as to one, and yet said that, if infringement were found as to that one, the complainants would be entitled to the decree prayed for. This cannot, however, be regarded as a decision on the point, for, if the court had found such infringement, as it did not, it might have refused to award costs because of failure to disclaim before suit. Likewise suggestive but inconclusive is the case of National Electric Signalling Co. v. De Forest Wireless Tel. Co., 140 F. 449, 455 (C. C. N. Y., 1905), in which Judge Wheeler, in awarding a decree with costs for the plaintiff, said, "The various forms of claims for the same thing need not all be valid; and those that for indescription are not valid need not be disclaimed in order to recover upon those that describe the actual,

668

invention." The claims in question had not, however, been explicitly declared invalid, but had been characterized merely as "so general as to leave their validity and application doubtful"; therefore they were not passed upon. See, also, 1 Walker, Patents (6th Ed. 1929) at 335 and 341; Russell v. Place, 94 U. S. 606, 609, 24 L. Ed. 214 (1876). But cf. Herman v. Youngstown Mfg. Co., 191 F. 579 (C. C. A. 6th, 1911); Suddard v. American Motor Co. (C. C.) supra, at page 857 of 163 F.

▮ But while we find unconvincing defendant's contention that, if the disclaimer statutes do not apply, the entire patent is void if any part thereof is invalid, equally unconvincing is plaintiff's contention that the disclaimer statutes are inapplicable because the patentee in the instant case did not, in the strict terms of the statute, claim "more than that of which he was the original or first inventor or discoverer," or claim "to be the original and/or first inventor or discoverer of any material or substantial part of the thing invented of which he was not the original or first inventor or discoverer." These statutes have been most liberally interpreted. They have been applied to a patent in which a claim was held invalid because it was first included in a reissue after an unreasonable delay, Gage v. Herring, 107 U. S. 640, 2 S. Ct. 819, 27 L. Ed. 601 (1882); to a patent threatened with invalidity because of joinder of unrelated inventions, Sessions v. Romadka, 145 U. S. 29, 12 S. Ct. 799, 36 L. Ed. 609 (1892); and to one attacked on the ground that certain clauses in the description illegally broadened the claim, Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 435, 22 S. Ct. 698, 46 L. Ed. 968 (1902). We may assume as plaintiff contends that in some cases, including that of the invalidity of one claim merely for indefiniteness, a disclaimer while proper under the disclaimer statutes is not necessary in order to save the validity of the patent. See Marconi Wireless Telegraph Co. of America v. De Forest Radio Telephone & Telegraph Co., 243 F. 560 (C. C. A. 2d, 1917). We find it, however, unnecessary to decide the question, because in our judgment claim 37 is within the obligatory range of the disclaimer statutes.

The claim reads as follows: "A control system for an elevator car comprising a plurality of up switches within the car, one for each of a plurality of landings, and a plurality of up switches without the car, one at each of said landings, both the up switches within the car and the up switches without

the car being operable to cause the stopping of the car at the respective landings upon its approaching said landings in the up direction; a plurality of down switches within the car, one for each of said landings, and a plurality of down switches without the car, one at each of said landings, both the down switches within the car and the down switches without the car being operable to cause the stopping of the car at the respective landings upon its approaching said landings in the down direction; and switching mechanism within the car, said switching mechanism being operable to cause the starting of the car from each and every landing in either direction."

The master's entire comment was: "This claim mentions the up and down switches both in the car and at the landings, ascribing to them the function of automatically stopping the car. The switches which are in the form of push buttons are only a small part of the combination of means which effect automatic stopping. The holding circuit and the secondary circuits and automatically operated circuit closing means for re-releasing the holding circuit must operate to produce the result described in this claim. The circuits and circuit closing means are not included in the claim in any way even in general terms, such as the 'means' or 'mechanism' found in the other claims. This description of the result without reference to structure cannot be read on the structure with sufficient accuracy to define the claim. While the inclusion in a claim of language describing function or result does not render the claim invalid, nevertheless, the claim must include such definition of structure that the elements of the structure claimed can be identified. It must also be considered that the other claims amply protect the invention. It is concluded that Claim 37 does not comply with section 4888 of the Revised Statutes and is, therefore, invalid."

▮ Even a casual reading of the claim and the master's finding discloses that the invalidity was not merely because of indefiniteness, but because it covered only a function. In Wyeth v. Stone, Fed. Cas. No. 18,107 (C. C. Mass. 1840), one of the claims in a patent for an ice cutting machine read as follows: "It is claimed, as new, to cut ice of a uniform size, by means of an apparatus worked by any other power than human. The invention of this art, as well as the particular method of the application of the principle, are claimed by the subscriber." This claim was held invalid because it was "a claim for an art

or principle in the abstract, and not for any particular method or machinery, by which ice is to be cut." Justice Story then raised the question "whether, although under the patent act of 1793, c. 55, the patent is absolutely void, because the claim includes an abstract principle, and is broader than the invention; or, whether that objection is cured by the disclaimer made by the patentee (Wyeth), under the Act of 1837, c. 45," and concluded that such a mistake could be cured by disclaimer.

The same problem was thoroughly considered in O'Reilly v. Morse, 15 How. 62, 86, 14 L. Ed. 601 (1853). The eighth claim of Morse's patent read: "I do not propose to limit myself to the specific machinery, or parts of machinery, described in the foregoing specifications and claims; the essence of my invention being the use of the motive power of the electric or galvanic current, which I call electro-magnetism, however developed, for making or printing intelligible characters, letters, or signs, at any distances, being a new application of that power, of which I claim to be the first inventor or discoverer." This claim was held invalid because it did not include a complete description of the invention required by the Act of July 4, 1836, c. 357, § 6, 5 Stat. 119 (substantially similar to Rev. St. § 4888). Complainants there too made substantially the same contention as is made here. They urged "that there is no necessity for a disclaimer in a case of this kind * * * and that his error, if any, was a mistake in law, in supposing his invention, as described in his specification, authorized this broad claim of exclusive privilege; and that the claim therefore may be regarded as a nullity, and allowed to stand in the patent without a disclaimer, and without affecting the validity of the patent." To this Chief Justice Taney answered:

"This distinction can hardly be maintained. The act of Congress above recited, requires that the invention shall be so described, that a person skilled in the science to which it appertains, or with which it is most nearly connected, shall be able to construct the improvement from the description given by the inventor.

"Now, in this case, there is no description but one, of a process by which signs or letters may be printed at a distance. And yet he claims the exclusive right to any other mode and any other process, although not described by him, by which the end can be accomplished, if electro-magnetism is used as the motive power. That is to say—he claims a patent,

for an effect produced by the use of electromagnetism distinct from the process or machinery necessary to produce it. The words of the acts of Congress above quoted show that no patent can lawfully issue upon such a claim. For he claims what he has not described in the manner required by law. And a patent for such a claim is as strongly forbidden by the act of Congress, as if some other person had invented it before him.

"Why, therefore, should he be required and permitted to disclaim in the one case and not in the other? The evil is the same if he claims more than he has invented, although no other person has invented it before him. He prevents others from attempting to improve upon the manner and process which he has described in his specification—and may deter the public from using it, even if discovered. He can lawfully claim only what he has invented and described, and if he claims more his patent is void. And the judgment in this case must be against the patentee, unless he is within the act of Congress which gives the right to disclaim." 15 How. 62, at pages 120, 121.

█ The opinion of Chief Justice Taney clearly shows that the distinction which plaintiff seeks to establish between a claim invalid for lack of sufficient description and a claim invalid because it claims too much, is in some cases at least an illusory one. In the instant case, just as in Wyeth v. Stone and O'Reilly v. Morse, the difficulty was occasioned by failure to incorporate in the claim a sufficient description of the invention; the result, however, was not an indefinite claim, but a claim broader than the patent law permits. Cf. Holland Furniture Co. v. Perkins Glue Co., 277 U. S. 245, 247, 48 S. Ct. 474, 72 L. Ed. 868 (1928). Claim 37 fully states the result to be accomplished by the invention, but the only means described for accomplishing it are a series of switches—i. e., push buttons. The ambit of the monopoly sought was not thereby made obscure, for any system controlled by electric switches for accomplishing the same result, would clearly have been an infringement. Consequently the question of the effect of a claim invalid for indefiniteness, as that term is more properly understood, upon the other claims of a patent, is not before us. It is enough for present purposes to apply the principle that a claim, invalid because it claims only the function or result of an invention, unless properly disclaimed, invalidates the entire patent.

The purpose of the master's finding as to claim 37 should have been sufficiently appar-

ent to plaintiff upon a reading of that finding alone. Any doubts, however, should have been dispelled by considering that finding in connection with the finding that claim 29, while "more descriptive of function than of the structure," was saved only by reading it in the light of the specifications, which in effect limits the claim to those elements of the structure, the function of which is described. Such reading could not, however, aid to save claim 37. Consequently the claim had to stand or fall on its own wording. It fell because it specified substantially nothing but a function. Invalidity of the claim was not contested by plaintiff after the master's report. We conclude, therefore, not only that the claim 37 was found invalid on grounds which would require seasonable disclaimer, but also that the master's report, uncontested in this respect, gave plaintiff sufficient notice of the situation.

We come then to plaintiff's contention, sustained by the District Judge, that the disclaimer was seasonably made even though filed fourteen months after the master's report, because the master's finding of invalidity was reviewable by the court while the case was under advisement, even though plaintiff had filed no exception thereto. Plaintiff now further urges that defendant's exception to the master's failure to find noninfringement of claim 37 was before the court and required or at least permitted a consideration of and a finding in respect to the validity of the claim. It is clear that defendants' exception, filed before plaintiff had filed its exceptions, was but a precautionary measure to enable them to urge noninfringement in case plaintiff should file its exceptions on the last day allowed either party under the rules and should include therein an exception to the finding that claim 37 was invalid. And it is likewise clear that, when plaintiff did not so except, defendant's exception was no longer of the slightest value. In fact, it was not referred to in the briefs filed in the District Court or as we may properly assume, from the opinion of the district judge, in the later oral argument before him. In the light of Ensten v. Simon, Ascher & Co., 282 U. S. 445, 51 S. Ct. 207, 75 L. Ed. 453 (1931), plaintiff's contentions cannot be sustained. The plaintiff in that case had secured an interlocutory decree in an earlier suit in which several of the claims of his patent were held valid and infringed and one of them (claim 2) invalid. On appeal by the defendants alone, the decree had been affirmed by the Circuit Court of Appeals [38 F.(2d) 71], without consideration of claim 2. Twenty-three months after the decree of the District Court and six months after the decision of the Circuit Court of Appeals, a disclaimer of the invalid claim was filed. Before the Supreme Court, plaintiffs contended that there had been no unreasonable delay because no final decree had been entered and because they were entitled to await the final decree and then appeal therefrom. The following answer of the court indicates that the determinative factor is not the finality of the decision, but the knowledge brought home to the patentee by the determination of a competent tribunal that he is the holder of a doubtful claim: "In certain definitely defined circumstances and to the end that the mistaken but honest inventor may obtain relief from the old rule, the disclaimer provisions permit him to deprive the public temporarily of complete freedom from the assertion of a monopoly apparently valid, but not so in fact. When a competent court has declared his pretensions without sufficient foundation, we think good faith and the spirit of the enactment demands that he act with such promptness as the circumstances permit either to vindicate his position or to relieve the public from further evil effects of his false assertion. But for the benign provisions of the statute, such an assertion would invalidate the whole patent; and these provisions were intended to protect only those who by prompt action either seek to overturn an adverse ruling or retreat from a false position." 282 U. S. at page 455, 51 S. Ct. 207, 210, 75 L. Ed. 453.

■■ Equally did good faith and the spirit of the enactment require that plaintiff herein should either except to the master's finding that claim 37 was invalid or else disclaim without unreasonable delay. It is, of course, true that even in the absence of an exception a master's finding may be reviewed by the court, but only in exceptional cases. See Sheffield & Birmingham Coal, Iron R. Co. v. Gordon, 151 U. S. 285, 14 S. Ct. 343, 38 L. Ed. 164 (1894). Neither is plaintiff's case aided by defendant's exception evidently taken purely out of an abundance of caution and never pressed. It was ineffective to discharge the affirmative duty resting upon plaintiff either to "seek to overturn an adverse ruling or retreat from a false position."

This interpretation of the Ensten Case has been carried even further by the Circuit Court of Appeals for the Second Circuit in Radio Condenser Co. v. General Instrument Corp., 65 F.(2d) 458, 459 (1933). Two claims of the patent there in suit had been held invalid by the Examiner of Interferences in the Pat-

ent Office. The patentee had neither disclaimed nor pursued the available remedies of an appeal through the Patent Office or of a suit against the interfering patentee. Judge Swan said: "The principle which the Ensten Case applies is that a patentee who discovers that he has included in his claims something of which he was not the first inventor must either promptly pursue available remedies to vindicate his claimed monopoly or else surrender his pretensions. \* \* \* When the patentee receives his warning from a competent official, whether it be by decision of a District Judge or of a Patent Office Examiner, he should be compelled to make good his claim or to renounce it."

Plaintiff has offered no other excuses for the delay of over a year in filing his disclaimer, and it is impossible to consider it as other than unreasonable. As between the conflicting decisions of the Seventh Circuit Court of Appeal in Excelsior Steel Furnace Co. v. F. Meyer & Bro. Co., 36 F.(2d) 447 (December, 1929), and that of the Second Circuit Court of Appeal in the Ensten Case (38 F.(2d) 71, February, 1930), plaintiff evidently relied upon the former whereas the Supreme Court on certiorari upheld the latter. Only shortly thereafter did plaintiff disclaim. The period of delay, whether dated from the filing of the master's report or from the submission of the exceptions to the District Judge, without plaintiff urging error as to the finding of invalidity of claim 37, was clearly too long. Cf. Minerals Separation, Ltd., v. Butte & Superior Mining Co., 250 U. S. 336, 39 S. Ct. 496, 63 L. Ed. 1019 (1919); Bassick Mfg. Co. v. Adams Grease Gun Corp., 52 F.(2d) 36 (C. C. A. 2d, 1931).

On the cross-appeal the decree will be reversed, with directions to dismiss the bill; plaintiff's appeal thereby becomes moot, and as such will be dismissed. Costs in both courts awarded to defendants.