**RAILWAY ENGINEERING EQUIPMENT CO. et al. v. OREGON SHORT LINE R. CO.***

No. 1260.

Circuit Court of Appeals, Tenth Circuit.

Sept. 19, 1935.

Rehearing Denied Oct. 25, 1935.

*Writ of certiorari denied 56 S. Ct. 383, 80 L. Ed. ——.

470

Kenaz Huffman, of Denver, Colo. (Hervey S. Knight, of Chicago, Ill., Beverly S. Clendenin, of Salt Lake City, Utah, and Parkinson & Lane, of Chicago, Ill., on the brief), for appellants.

L. B. Mann, of Chicago, Ill. (C. C. Dorsey, of Denver, Colo., and Geo. H. Smith, of Salt Lake City, Utah, on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

LEWIS, Circuit Judge.

This is a motion to dismiss an appeal in a patent infringement suit. The bill was filed November 12, 1932. It charged that on May 26, 1921, Alfred W. Towsley and Spencer Otis were the original, first and joint inventors of a new and useful Locomotive Terminal for which U. S. Letters Patent No. 1,413,365 was issued to them on April 18, 1922, on their application of May 26, 1921; that on May 22, 1922, Spencer Otis was the original, first and sole inventor of a new and useful Direct Steaming . System for Locomotives for which U. S. Letters Patent No. 1,592,618 was issued to him on July 13, 1926, on his application of May 22, 1922; that on November 29, 1926, Leland· G. Plant was the original, first and sole inventor· of a new and useful Locomotive Terminal for which U. S. Letters Patent No. 1,686,103 was issued him on October 2, 1928, on his application filed November 29, 1926; that defendant, appellee here, had infringed each of said letters patent by erecting or using at Pocatello, Idaho, a Direct Steaming System embodying the inventions of each of said letters patent, and unless enjoined it would continue such infringement. Appellant sued as assignee of the three patents.

On December 2, 1932, defendant moved that the court require the plaintiff to specify the claims of the patents on which it would rely as having been infringed. On February 7, 1933, the plaintiff below filed what it termed its answer to defendant's motion for further particulars in which it said that so far as it was able to then state and without admitting non-infringement of claims not specified it would rely upon claim 5 of the Towsley and Otis patent, claim 4 of the Otis patent, and claims 8, 11, 14 and 15 of the Plant patent, and it specified its amendments in this wise, by inserting in the complaint in a named paragraph after patent No. 1,413,365, "and particularly claim 5 thereof," by inserting after patent No. 1,592,618, "and particularly claim 4 thereof," and by inserting after patent No. 1,686,103, "and particularly claims 8, 11, 14 and 15 thereof."

On October 2, 1933, the plaintiff amended its bill in purely formal respects.

Claim 5 of the Towsley and Otis patent is this:

"5. In combination with a locomotive terminal house, a station having trackage for receiving a locomotive from service, means for subjecting the locomotive to service-restoring treatment, and means for supplying live steam from an extraneous source to the boiler of the locomotive in said station in quantity suf-

ficient to restore the locomotive to the power of self propulsion."

That patent contains twenty-one additional claims.

Claim 4 of the Otis patent is this:

"4. The method of refilling empty locomotive boilers and developing steam pressure therein, which consists in taking water from a non-steam-generating water source, and introducing it into the boiler, then while continuing the supply of water, taking a body of steam from a separate source and releasing it into mixing and heating relation to such water, until a desired water level is attained, the components of water and steam being of such temperatures and so proportioned that the contents of the boiler will have attained a steaming temperature on or before reaching said level, and then continuing the introduction of the steam without the water, until a working pressure is developed in the boiler."

That patent contains three additional claims.

The 8th claim of the Plant patent is this:

"8. The method of storing steam locomotives at a terminal, which consists in discharging the locomotive fire at a fire dumping station, placing the locomotive at the storage station, emptying and refilling the locomotive boiler at the storage station and there re-establishing and subsequently maintaining a working steam pressure with corresponding water temperature throughout the locomotive boiler, without fire in the locomotive, then moving the locomotive from the storage station by self propulsion, and thereafter igniting the fire and dispatching the locomotive for service."

That patent contains in addition to the four claims sued on seventeen other claims.

Defendant's answer denied invention, alleged anticipation, plead the prior state of the art and use by named railroads.

When the trial came on, September 25, 1933, appellant withdrew all claims under the Towsley and Otis patent and relied on claim 4 of the Otis patent and claims 8, 11, 14 and 15 of the Plant patent. Final hearing, including arguments of counsel, closed on October 3, 1933, and the court took the case under advisement.

The condensed and narrative statement of the evidence given in court and by depositions was not lodged with the clerk until February 11, 1935. It was approved by the trial judge on March 9, 1935. Prior thereto and on July 5, 1934, the District Judge rendered and filed in the clerk's office a written opinion, 12 F. Supp. 220, in which he found that Raymer patent No. 788,376 dated April 25, 1905, and Gale patent No. 831,337 dated September 18, 1906, covered a method for supplying and using hot water in washing out and refilling locomotive boilers preparatory to returning them to service, and that those methods were quite generally adopted and used by railroads as licensees during the life of those patents and that defendant at the time of the alleged infringements was using the system described in said patents, and that in his opinion the Otis claim was anticipated by both Raymer and Gale, and that both Otis and Plant were invalid for lack of invention in view of the state of the art at the time of applications therefor. Both parties accepted the written opinion of the court as a sufficient finding of facts and conclusions of law. No other document, order or proceeding of any nature appears in the record to have been filed or taken thereafter until August 25, 1934, on which day the District Judge signed a decree of dismissal, and it was filed with the clerk and the decree entered on that day. Thus, the case stood until November 22 following, on which day appellant filed its petition for this appeal, its assignment of errors, and the court on that day entered its order granting the appeal and approved the appeal bond. The appeal was not lodged here until April 1, 1935, whereupon appellee filed its motion to dismiss the appeal, having served appellant's counsel with copy thereof on April 6, 1935.

The ground of appellee's motion to dismiss is that the alleged errors of the trial court have become moot questions because appellant-plaintiff unreasonably neglected and delayed in appealing to this court or to enter disclaimers in the Patent Office following the decision of the trial court, hence the patents in suit are invalid.

From the foregoing statement of facts it appears that 51 days elapsed after the District Judge rendered his decision in the cause before final decree was entered, 140 days elapsed after said decision before this appeal was asked and allowed,

and 89 days elapsed between entry of the decree and filing petition for appeal and its allowance.

■ Appellee relies on sections 4917 and 4922, Rev. Stat. (35 U. S. Code, §§ 65 and 71 [35 USCA §§ 65, 71]), and the construction that has been placed upon it by the Supreme Court in Ensten v. Simon, Ascher & Co., 282 U. S. 445, 51 S. Ct. 207, 75 L. Ed. 453. Many other cases in inferior federal courts are there cited and discussed. See, also, Ensten v. Rich-Sampliner Co. (D. C.) 13 F.(2d) 132; Radio Condenser Co. v. General Instrument Corp. (C. C. A.) 65 F.(2d) 458; Otis Elevator Co. v. Pacific Fin. Corp. (C. C. A.) 68 F.(2d) 664, and Id. (C. C. A.) 71 F.(2d) 641; Better Packages v. Link & Co. (C. C. A.) 74 F.(2d) 679. This is an old statute (sections 7 and 9, Act of March 3, 1837, 5 Stat. 191, 193, 194), and with slight modifications has been continued. It relieves the patentee who procures allowance of an invalid claim or claims through inadvertence, accident or mistake, and without any fraudulent or deceptive intention, if he complies with the statute, from the rule that an invalid claim renders the whole patent void. Its requirement, as construed, is that the patentee with such promptness as the circumstances permit must either disclaim in the Patent Office the claim which a competent court has declared to be invalid or with like promptness appeal therefrom; and unless he does one or the other there can be no exemption from the general rule. The point here is, Did appellant permit an unreasonable time to elapse without disclaiming after the District Judge declared the claims sued on to be invalid, or suspend its duty to disclaim within such reasonable time by promptly appealing from that decision? The time given the litigant by statute within which to appeal is not a measure of what is promptness in making disclaimer. It begins to run when a competent court declares the claim or claims invalid. In the Ensten Case, 282 U. S. 445, at page 455, 51 S. Ct. 207, 210, 75 L. Ed. 453, the court said:

"In certain definitely defined circumstances and to the end that the mistaken but honest inventor may obtain relief from the old rule, the disclaimer provisions permit him to deprive the public temporarily of complete freedom from the assertion of a monopoly apparently valid, but not so in fact. When a competent court has declared his pretensions without sufficient foundation, we think good faith and the spirit of the enactment demands that he act with such promptness as the circumstances permit either to vindicate his position or to relieve the public from further evil effects of his false assertion. But for the benign provisions of the statute, such an assertion would invalidate the whole patent; and these provisions were intended to protect only those who by prompt action either seek to overturn an adverse ruling or retreat from a false position."

That decision was rendered 2 years and 8 months before the trial closed in the instant case. The statute itself withholds its benefits from the patentee who unreasonably neglects or delays to make disclaimer. Notwithstanding, appellant let 51 days run after the court's decision without having a final decree entered, and then 89 days more before asking the court to grant appeal—a simple procedure that could have been taken the day the decree was entered. The statute granting appeal (Act February 13, 1925, § 8 (c), 28 USCA § 230) provides that application therefor must be made "within three months after the entry of such judgment or decree." Appellant here waited until the 89th day. In Minerals Separation v. Butte, etc., Mining Co., 250 U. S. 336, 39 S. Ct. 496, 63 L. Ed. 1019, the delay in filing disclaimer was 107 days after the decision of the court holding three claims in suit invalid. It was held not to be unreasonable neglect or delay because the owners of the patent in suit resided in a foreign country and World War conditions then prevailed.

Inventions, letters patent therefor, and rights under them are within the exclusive power of Congress. The disclaimer statute was intended as a protection to a patentee under the conditions which it sets forth. Its purpose was also in public interest. It is not unfair. The patentee is required to take action and must not unreasonably delay or neglect to do so. Whether he chooses to disclaim or appeal it must be done with promptness, and in that we think appellant failed. The motion will be sustained. It is so ordered.

■ We do not dissent from what Judge McDermott says in his concurrence re-

specting Equity Rule 75 (28 USCA following section 723), appellant's failure to comply therewith and his conclusion therefrom as an additional ground of dismissal.

### McDERMOTT, Circuit Judge.

There has been no attempt at all to condense a large part of the evidence. It consists of a great mass of documentary proof, the condensation of the material parts of which would have been a laborious task. The correspondence between counsel discloses that a large box of these original exhibits was transmitted to the clerk of this court under our Rule 32 designed for models, diagrams, and other exhibits which cannot be condensed or reproduced on the printed page. That rule was not designed to except from Equity Rule 75 lengthy documents which may be condensed, or only a small part of which has any relevancy.

The situation is aggravated by the circumstance that counsel knew of the rules and the proper interpretation thereof. One letter discloses that the clerk of the trial court advised counsel "that he is sure the box of exhibits will be returned as not properly included in the record."

Nearly four years ago, Hughes v. Reed, 46 F.(2d) 435, 438, this court called attention to the plain language of Equity Rule 75, and said:

"The rule is applicable to 'the evidence,' and is not confined to 'the testimony of witnesses.' An effort has been made to avoid printing the testimony of witnesses in question and answer form, although parts of that are a mere combination of question and answer, rather than a narration. But no effort has been made to 'state in simple and condensed form' the 340 exhibits introduced."

It would be impracticable for each member of this court to cull through a large box of printed matter in search for the part of each document material to this appeal. The box would have to go to each of the judges in turn, and it would require weeks of steady reading to sift the wheat from the chaff. If no other cases were pending in this court, it would be possible, in time, to accomplish the task. But other cases are pending, in which litigants are entitled to a prompt decision. Counsel are familiar with their own exhibits, and can summarize the material parts much quicker than we. It will require much less time on their part than ours. We should not be asked to spend ten hours to save counsel one.

Since appellant did not prepare and file with the clerk of the district court a condensed and narrative statement of all the material evidence, the appeal should be dismissed.

I do not, however, agree that appellant has lost its patents because it failed to prosecute its appeal more promptly. Appellant, not having disclaimed under 35 USCA § 71, must, to save its patents, take appropriate steps to vindicate its position, which in this case is by this appeal. That step must likewise be taken without unreasonable neglect or delay. But I do not believe the courts should say there has been unreasonable neglect or delay if the appeal is taken within the time prescribed by statute. Congress has prescribed a time, determined by it to be reasonable, for appeals. As communication facilities have improved, the time has been shortened; it is now three months in some cases, thirty days in others, and five days in still others. I doubt the wisdom of the courts holding that the time prescribed by Congress is unreasonable.

I agree that three months is not needed to determine whether an appeal should be taken, but I think a definite and certain shorter period should be prescribed, for the future only, by the rule-making power, and that the courts should not declare a patent void where an appeal is taken within the period prescribed by Congress because under the facts in a particular case, the appeal might have been taken earlier.

The rule adopted by the majority opinion injects a troublesome fact question into patent cases at the threshold of the appeal—a fact to be determined by the court "either by its own investigation or the verdict of a jury." Ensten v. Simon, Ascher & Co., 282 U. S. 445, 453, 51 S. Ct. 207, 209, 75 L. Ed. 453. It displaces certainty with uncertainty. It makes for delay and not expedition, and increases the costs of litigation. Take this case. The motion to dismiss was filed in April. The fact question has been explored by both sides. Printed and typewritten briefs have been submitted. Oral argument has been had. Although a decision of the question has been reached with

all convenient speed, it is now September. "As promptly as possible" is such an elastic question of fact that astute patent lawyers, anxious to avoid a review on the merits, can in most cases make a showing that an appeal might forsooth have been taken a few days earlier.

The language used in Ensten v. Simon, Ascher & Co., supra, supports the majority view. But there was neither disclaimer nor appeal in that case for 23 months. The question arose on an appeal from a decision adjudging a patent invalid for failure to disclaim or appeal for 23 months. It did not adjudge a patent void where appeal was taken within the period prescribed by Congress, and the opinion should be read against the background of the facts. In the long history of the disclaimer statute, no patent ever before has been held void because an appeal was not taken prior to the expiration of the statutory period. On the contrary, courts frequently have said that disclaimers must be filed within a reasonable time—generally 30 days—after the statutory time for appeal or application for certiorari has expired.

The trend of the times is very strongly toward expediting litigation, a trend with which I am heartily in accord. But it does not make for expedition to substitute an indefinite standard of reasonable promptness for a specific period fixed by statute.